NORTON v. EVANS et al.

(Circuit Court of Appeals, Eighth Circuit.    September 28, 1897.)

No. 887.

PUBLIC LANDS—ATTEMPTED HOMESTEAD ENTRY—RAILROAD GRANTS—FORFEITURE.

In 1885 plaintiff applied to the local land office to enter certain lands under the homestead laws, which application was rejected. He nevertheless attempted to settle upon the lands, but was deterred by threats of one of the defendants, who had purchased the lands from a railroad company claiming the same under a railroad aid grant. In 1895 defendants were allowed to purchase the land from the government, under the act of March 3, 1887 (24 Stat. 556), which gives to bona fide purchasers from the companies a right to purchase their land from the United States, except in cases (1) where, at the date of the sale by the railroad company, the lands were in the bona fide occupation of adverse claimants under the preemption or homestead laws, and (2) where lands were settled upon prior to December 1, 1882, by persons claiming to enter the same; in which cases the said adverse claimants or settlers are authorized to perfect their titles. *Held*, that plaintiff's attempt to enter and to settle the land conferred upon him no vested rights, that he did not come within either of these exceptions, and therefore had no right to the land as against the defendants.

Appeal from the Circuit Court of the United States for the District of Colorado.

On December 2, 1895, appellant, as plaintiff, filed his bill of complaint in the district court of Jefferson county, Colo., praying that defendants, as holders of the legal title to the S. W. ¼ of section 3, town 4, range 69, in said county, be adjudged and decreed to hold such title as trustees for the plaintiff, and be ordered to convey such title to him. The case was removed to the circuit court of the United States for the district of Colorado, and on May 8, 1896, a demurrer to the bill of complaint was sustained, and a decree entered in favor of the defendants, whereupon plaintiff appealed to this court. The bill alleges that the plaintiff is a native-born citizen of the United States over the age of 21 years, and possesses the other qualifications prescribed by statute for one seeking to make a homestead entry on the public lands of the United States; that on the 12th day of June, 1885,—more than 10 years before the filing of the bill,—he applied to the local land office to enter the entire tract under the homestead law; that the application was in due form, and the proper fees and commissions were tendered, but that said application to enter was rejected; that immediately thereafter he purchased lumber and made arrangements for entering and settling upon the land, but was prevented therefrom by the threats and intimidation of one of the defendants; that, after the refusal of the local land office to accept his application, he appealed from such decision to the commissioner of the general land office; that such appeal was sustained by that commissioner, and he was awarded the right to enter the land; that thereafter, on further appeal to the secretary of the interior, the ruling of the commissioner was reversed. It further appears that the Denver Pacific Railway & Telegraph Company, claiming the land as a part of its land grant, had, through its trustee, conveyed the tract on July 21, 1874, to Horace A. Gray and Peter G. Bradstreet; that on June 7, 1877, Horace A. Gray conveyed his undivided one-half interest to Margaret P. Evans; that in 1883 Evans and Bradstreet conveyed to John S. Stanger; and that subsequently, and pending the appeal to the secretary of the interior, the defendant Willard Teller acquired the interest of Stanger. The bill further shows that on September 21, 1892, the secretary of the interior, on consideration of the appeal from the decision of the commissioner of the general land office, sustained an application of the grantees of the railway company to purchase the land, under the authority of the fifth section of the act of March 3, 1887 (24 Stat. 556); that upon this decision, and on June 6, 1895, such grantees paid the sum of $400, and received a receiver's final receipt, which in the due course of business in the land department would be followed by a patent. The act of March 3, 1887, is one providing for the adjustment of land grants made by congress to aid in the construction of railroads, for the forfeiture of unearned lands and other purposes, and contemplates in several of its sections the protection of bona fide purchasers from the railway companies. Section 5 is as follows: "Sec. 5. That where any said company shall have sold to citizens of the United States, or to persons who have declared their intention to become such citizens, as a part of its grant, lands not conveyed to or for the use of such company, said lands being the numbered sections prescribed in the grant, and being coterminous with the constructed parts of said road, and where the lands so sold are for any reason excepted from the operation of the grant to said company, it shall be lawful for the bona fide purchaser thereof from said company to make payment to the United States for said lands at the ordinary government price for like lands, and thereupon patents shall issue therefor to the said bona fide purchaser, his heirs or assigns: provided, that all lands shall be excepted from the provisions of this section which at the date of such sales were in the bona fide occupation of adverse claimants under the pre-emption or homestead laws of the United States, and whose claims and occupation have not since been voluntarily abandoned, as to which excepted lands the said pre-emption and homestead claimants shall be permitted to perfect their proofs and entries and receive patents therefor: provided further, that this section shall not apply to lands settled upon subsequent to the first day of December, eighteen hundred and eighty-two, by persons claiming to enter the same under the settle-

ment laws of the United States, as to which lands the parties claiming the same as aforesaid shall be entitled to prove up and enter as in other like cases."

Frank J. Mott, for appellant.

Willard Teller, for appellees.

Before BREWER, Circuit Justice, and SANBORN and THAYER, Circuit Judges.

BREWER, Circuit Justice, after stating the case as above, delivered the opinion of the court.

Certain technical objections are made by the appellees to the sufficiency of the bill of complaint. One is that, while the plaintiff alleges that in 1895, at the time of the filing of the bill, he was over the age of 21 years, and duly qualified to enter a homestead under the laws of the United States, he does not allege that he was of that age or so qualified in 1885, when he filed his application to enter. Another is that it appears that the land was within the terminal limits of a railroad land grant; that by section 2357, Rev. St., the price of all public land within such limits was fixed at $2.50 per acre; that under sections 2289, 2290, Rev. St., no one could take on a homestead entry more than 80 acres; and that, as plaintiff avers he offered to enter 160 acres, the application was, on account of the insufficiency of identification, void for either and both halves of the 160 acres. We do not care, however, to place our decision on any such technical objections, for we think the ruling of the secretary of the interior was right; that under said section 5 the right to purchase the land was properly awarded to the grantees of the railway company. There is no allegation that the purchasers from the railway company were not bona fide purchasers, or that the land was not within the numbered sections of the grant to the railway company, and coterminous with the constructed parts of the road. On the contrary, the decision of the secretary of the interior affirms these facts. Clearly, therefore, the grantees of the company come within the provisions of the first part of section 5, and, this being a remedial statute, and intended to protect those acting in good faith, should be liberally construed. There are two provisos to this section,—one excepting therefrom all lands which at the date of the sale by the railway company were in the bona fide occupation of adverse claimants under the pre-emption or homestead laws of the United States. That clearly has no application. There is no suggestion of any such adverse occupation. The other proviso is that the "section shall not apply to lands settled upon subsequent to the 1st day of December, 1882, by persons claiming to enter the same under the settlement laws of the United States." But plaintiff had not settled upon the land. He certainly does not come, therefore, within the letter of this proviso. He had not even entered the land. His contention is, however, that he had tried to enter the land, had a right to enter it; that his application was erroneously refused by the local land officers; that he had sought to settle upon the land, and had been prevented therefrom by the wrongful acts of one of the defendants; that all this took place before the passage of the act of 1887; and that thereby he had acquired

a vested right in the land, which even congress could not take away. He refers to Ard v. Brandon, 156 U. S. 537, 15 Sup. Ct. 406, as authority for the proposition that he could not be deprived of any rights by the wrongful acts of the local land officers, and insists that therefore the case must be treated as though he had actually made a homestead entry, and had acquired such a right in the land as was beyond the reach of congress to disturb by subsequent legislation; and concludes therefrom that the act of 1887 has no application to his case. We are unable to agree with this contention. He is in no better position than if he had been allowed by the local land office to make the entry. Such an entry creates no vested rights as against the United States, and does not interfere with the power of congress by subsequent legislation to dispose of the land. Frisbie v. Whitney, 9 Wall. 187; The Yosemite Valley Case, 15 Wall. 77; Buxton v. Traver, 130 U. S. 232, 9 Sup. Ct. 509; Campbell v. Wade, 132 U. S. 34, 10 Sup. Ct. 9. See, also, Winona & St. P. R. Co. v. U. S., 165 U. S. 463, 17 Sup. Ct. 381. The decree of the circuit court was right, and it is affirmed.