(March 15, 1905.)

## OREGON SHORT LINE RAILROAD COMPANY v. QUIGLEY.

### [80 Pac. 401.]

RAILROAD RIGHT OF WAY—ACT OF CONGRESS GRANTING SAME—WHEN GRANT VESTS—PUBLIC LANDS—OF WHAT CONSIST—POWER OF CONGRESS OVER SAME IS ABSOLUTE—ESTOPPEL BY DEED NOT APPLICABLE TO GRANTEE—ADVERSE POSSESSION AND STATUTE OF LIMITATIONS—WHEN PLEA NOT AVAILABLE.

1. The power of Congress over the public lands is plenary so long as title thereto remains in the government, and no right of property therein has vested in another.

2. No right of property, as against the government, vests in a settler on public lands until he has complied with all the prerequisites for acquiring title and paid the purchase money.

3. Act of Congress of March 3, 1873, granting a right of way to the Utah and Northern Railway Company, and requiring the filing of a map of definite location with the Secretary of the Interior, is substantially complied with, so far as settlers are concerned, by the actual construction and operation of the road.

4. ID.—The grant for right of way became definitely fixed by the actual construction of the road as effectually as it could have been by the filing of a map of location.

5. The grant by Congress of a right of way one hundred feet wide on each side of the central line of the track was a conclusive determination of the reasonable and necessary quantity of land to be dedicated to such use, and carried with it the right of possession to the whole of such grant,

6. As a general rule of law, the grantee named in a deed of conveyance is not estopped to deny the title of his grantor.

7. Id.—The estoppel exists only where there is an obligation to restore the possession in some event or upon some contingency.

8. The grant by Congress of a right of way is not an absolute fee for all purposes, but is in the nature of a conditional grant and limited to use and occupation for railway purposes. The franchise and right of way are inseparably attached to each other.

9. Id.—The company could not by its grant convey any part of the right of way in such manner or for such purpose as would sever the right of possession from the franchise to operate and maintain a railway line thereon.

10. Id.—It therefore follows that adverse possession cannot ripen into a right which would divert the use and occupation of such right of way from that to which Congress made the dedication.

11. The statute of limitations will not run against an action to maintain the integrity of the right of way granted by Congress for a specific use and purpose.

(Syllabus by the court.)

APPEAL from District Court in and for Bannock County. Honorable Alfred Budge, Judge.

### STATEMENT OF FACTS.

The plaintiff commenced this action in the lower court against the defendant to quiet its title to a right of way two hundred feet wide across two adjoining tracts of land of one hundred and sixty acres each, which were originally settled upon by Joseph Hendricks and Andrew Quigley, respectively, The plaintiff, the Oregon Short Line Railroad Company, is the grantee and successor to the Utah and Northern Railway Company. On March 3, 1873, an act of Congress was approved granting a right of way to the Utah and Northern Railway Company over the public lands in the territories of Montana, Utah and Idaho, which act is as follows:

"An Act Granting the Right of Way Through the Public Lands to the Utah and Northern Railroad Company.

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That

for the purpose of enabling the Utah and Northern Railroad Company, a corporation organized under the laws of the territory of Utah to build and extend its line by way of Bear river valley, Soda Springs, Snake river valley, and through Montana Territory to a connection with the Northern Pacific Railroad, by the most advantageous and practicable line, to be selected by said company, the right of way through the public lands in the territory of Utah, Idaho, and Montana is hereby granted to said company. Said right of way hereby granted to said company is to be the extent of one hundred feet in width on each side of the central line of said road where it may pass over the public lands. There is also hereby granted to said company all necessary ground, not to exceed twenty acres for each ten miles in length of the main line of said railroad, for station buildings, workshops, depots, machine-shops, switches, sidetracks, turntables and water stations. And whenever it may be necessary to use material from the public lands for the construction of said road, it may be done; but no private property shall be taken for the use of said company, except in the manner now provided by section three of an act entitled, 'An act to amend an act entitled "An act to aid in the construction of a railroad and telegraph line from the Missouri river to the Pacific Ocean, and to secure to the government the use of the same for postal, military and other purposes," approved July first, eighteen hundred and sixty-two,' approved July second, eighteen hundred and sixty-seven.

"Sec. 2. That said company shall be authorized and empowered to mortgage, in the usual manner, their franchise, roadbed, and all property belonging to said company, to an amount not to exceed fifteen thousand dollars per mile for the entire length of said road, upon such terms as may seem to them best; and upon said mortgage may issue mortgage bonds, not to exceed the same amount per mile; but in no case shall the United States be liable in any way whatever for anything done by said company.

"Sec. 3. That the rights herein granted shall not preclude the construction of other roads through any canyon, defile, or pass on the route of said road.

"Sec. 4. That the said railroad company shall locate the route of said railroad and file a map of such location within one year in the office of the Secretary of the Interior; and shall complete its railroad within ten years after the passage of this act; and nothing herein contained shall be construed as recognizing or denying the authority of the legislature of Utah Territory to create railroad corporations.

"Sec. 5. The Congress reserves to itself the right to alter, amend, or repeal this act whenever in its judgment the interests of the people may require it."

In 1875, and after the lands in dispute had been surveyed and were open to sale and settlement, Quigley and Hendricks each located on a one hundred and sixty acre tract of land, and continued with their families to occupy their respective lands until they thereafter acquired patents from the government. In 1878 the Utah and Northern Railway Company decided to build their road by way of Marsh valley, Portneuf river and Snake river valley, instead of over the originally planned route by way of Soda Springs and Snake river valley. In the course of the construction of the road and during the spring of '78, they came to the claims occupied by Quigley and Hendricks, and in order to immediately construct over the lands so occupied, the railway company, on May 28th, through its trustee, Jay Gould, purchased from Quigley and Hendricks a right of way sixty feet wide across their respective possessory claims, and took from each a quitclaim deed, and at the same time took contracts from each wherein they agreed to execute to the railway company warranty deeds for such right of way upon receiving patent therefor from the government. The road was immediately constructed across these tracts of land and was completed and in operation prior to the 20th of June following. On June 20, 1878, and after the construction and completion of the road, Congress passed an additional and supplemental act to that of March 3, 1873, granting to the Utah and Northern Railway Company the right of way over the public lands by way of Marsh valley, Portneuf river and Snake river valley, which act is as follows:

"An Act Creating the Utah and Northern Railway Company, a
Corporation, in the Territories of Utah, Idaho, and Mon-
tana, and Granting the Right of Way to Said Company
Through the Public Lands.

"Be it enacted by the Senate and House of Representatives
of the United States of America in Congress assembled, That
the right of way through the public lands of the United States
and other privileges heretofore granted by law to the Utah and
Northern Railroad Company, are hereby modified and regranted
so as to enable the Utah and Northern Railway Company and
its assigns to build their road by way of Marsh valley, Portneuf
river and Snake river valley instead of by the way of Soda
Springs and Snake river valley, as originally granted.

"Sec. 2. And said company is hereby made a railroad cor-
poration in the territories of Utah, Idaho, and Montana, under
the same conditions and limitations and with the same rights
and privileges that it now has and enjoys under its articles of
incorporation. Provided, that said corporation shall at all
times hereafter be subject to all the laws and regulations in re-
lation to railroads of the United States or of any territory or
state through which it may pass. And suits against said cor-
poration may be instituted in the courts of said territories or
either of them having jurisdiction by the laws of such terri-
tory.

"Sec. 3. Congress may at any time add to, alter, amend or
repeal this act."

No further transactions appear to have taken place between
the railway company and Quigley and Hendricks or their suc-
cessors in interest, since the approval of the act of Congress
of June 20, 1878. In the meanwhile the railway company
have maintained and operated the road, and it is agreed that
the company has used and occupied all of such right of way
necessary or needful for its purposes during that time, and that
the same has never at any time exceeded the sixty-six feet
originally granted by quitclaim deed to Gould. No warranty
deed has ever been given by Quigley and Hendricks, and does
not appear to have ever been demanded by the railway company.
On December 7, 1878, Quigley filed a homestead on his one

hundred and sixty acre tract and received a final land office certificate for the same on October 6, 1882; and thereafter received patent.   Hendricks filed on his one hundred and sixty acre tract on December 31, 1880, and received patent therefor December 23, 1882.   In 1881 the railway company constructed fences along their right of way and across these tracts of land, the fences on each side of the track being thirty-three feet from the center of the track.   The company did not file its map of location until May, 1881—some three years after the completion of the road.   Quigley and Hendricks, their grantees and successors, have cultivated the lands on each side of the track continuously ever since the construction of the road up to within thirty-three feet of the center of the track.   This action was commenced by the plaintiff to quiet its title to the full right of way of two hundred feet wide as granted by the act of Congress.   The case was heard upon an agreed statement of facts and the statement of facts was accepted and adopted by the court as his findings of fact, and upon such findings he drew his conclusions of law, which are as follows:

1. "That the rights of the plaintiff under its grant from the United States did not attach to the lands in question until after the rights of the defendants had accrued."

2. "That the plaintiff is estopped to assert or claim any rights in or to the lands in question, except the right of way thirty-three (33) feet in width upon each side of the center line of its roadbed as now located and used, being the right of way inclosed by the plaintiff with its fence."

3. "That the rights of the defendants, except as far as the same have been conveyed to the plaintiff, are superior to the rights of the plaintiff in and to the lands in question."

4. "That the defendants should recover their costs in this action."

And judgment is ordered accordingly.

Judgment was entered for defendants from which plaintiff appealed.   Reversed.

The facts are stated in the opinion.

P. L. Williams and F. S. Dietrich, for Appellant.

Nearly, if not all, authorities cited in appellant's brief are found and commented on in the opinion.

Standrod & Terrell, for Respondent.

It may be conceded that the lands of the respondents, on the twentieth day of June, 1878, as between their predecessors and the United States, were public lands, and continued to be public lands until the respective entries of Quigley and Hendricks, December 7, 1878, and December 31, 1880. After said dates of entry the lands so entered were no longer public lands of the United States. (*Bardon v. Northern Pac. R. R. Co.*, 145 U. S. 535, 12 Sup. Ct. Rep. 856, 36 L. ed. 808; *Hastings & D. R. R. Co. v. Whitney,* 132 U. S. 357-361, 10 Sup. Ct. Rep. 112, 33 L. ed. 364; *Leavenworth R. R. Co. v. United States,* 92 U. S. 733, 23 L. ed. 634; *Witherspoon v. Duncan,* 4 Wall. (U. S.) 210-218, 18 L. ed. 339.) And therefore, on the tenth day of May, 1881, when the predecessor of appellant filed in the office of the Secretary of the Interior its map of definite location of its route, the lands described in the complaint were not public lands, and not subject to the definite location of the appellant's map, nor to the grant of June 20, 1878, which, until the time of definite location as provided by said act, was a mere float. Counsel for the appellant takes comfort in the fact that the act of June 20, 1878, is a grant *in praesenti.* Upon this question we call attention to the reasoning and the language of the supreme court of the United States, in the case of *St. Paul etc. R. R. Co. v. Northern Pac. R. R. Co.,* 139 U. S. 1-5, 35 L. ed. 77. (*United States v. Oregon Cent. R. Co.,* 176 U. S. 28-43, 20 Sup. Ct. Rep. 261, 44 L. ed. 358; *Mennotti v. Dillon,* 167 U. S: 703-720, 17 Sup. Ct. ep. 945, 42 L. ed. 333; *Northern Pac. R. R. Co. v. Sanders,* 166 U. S. 620-632, 634, 636, 17 Sup. Ct. Rep. 671, 41 L. ed. 1139.; *United States v. Northern Pac. R. R. Co.,* 152 U. S. 284-296, 298, 14 Sup. Ct. Rep. 598, 38 L. ed. 443; *Railroad Co. v. Baldwin,* 103 U. S. 426, 26 L. ed. 578; *Leavenworth etc. R. R. Co. v. United States,* 92 U. S. 733, 23 L. ed. 634; *Nelson v. Northern Pac. R. R. Co.,* 188 U. S. 108, 23 Sup. Ct. Rep. 306, 47 L. ed. 406.) We

concede that appellant is entitled to a right of way sixty-six feet wide not because of the grant claimed, but by reason of the quitclaim deed from respondents for that amount and possession under it, by which respondents would be forever estopped, and we contend that the estoppel would be mutual.   We think the general rule is well settled, both upon reason and authority, that the grant of public lands to a railroad, as a bonus or for right of way, is not operative until after the filing of the map of definite location, and then only as to such lands of the public domain as are undisposed of for other purposes under other laws.   The grant operates upon only such lands as are subject to the grant (not otherwise disposed of), and the title to such lands as are identified by the map relates back to the date of the grant.   (*Northern Pac. R. R. Co. v. Sanders,* 166 U. S. 620, 17 Sup. Ct. Rep. 671, 41 L. ed. 1139; *Van Wyck v. Knevals,* 106 U. S. 360, 1 Sup. Ct. Rep. 336, 27 L. ed. 201; *United States v. Oregon Cent. Pac. R. R. Co.,* 176 U. S. 28, 20 Sup. Ct. Rep. 261, 44 L. ed. 358; *Clements v. Warner,* 24 How. 394-397, 16 L. ed. 695; *Ard v. Brandon,* 156 U. S. 537, 15 Sup. Ct. Rep. 406, 39 L. ed. 524; *Nelson v. Northern Pac. R. R. Co.,* 188 U. S. 108, 23 Sup. Ct. Rep. 307, 47 L. ed. 406.)   But counsel for appellant contend that the railroad in question, being actually located and built along a certain route, superseded the necessity of filing a map as required by the acts of Congress granting the right of way, and cite in support of their contention the case of *Jamestown etc. R. R.   Co. v. Jones,* 177 U. S. 125, 20 Sup. Ct. Rep. 568, 44 L. ed. 698.   The rule is well settled that statutory grants of property, franchises or privileges in which the government has no interest are to be strictly construed in favor of the public and against the grantee, and nothing will pass except what is granted in clear and explicit terms.   (Black's Interpretation of Laws, p. 316; *Coosaw Min. Co. v. South Carolina,* 144 U. S. 550, 12 Sup. Ct. Rep. 689, 36 L. ed. 537; *Holyoke Co. v. Lyman,* 15 Wall. (U. S.) 512, 21 L. ed. 137; *Slidell v. Grandjean,* 111 U. S. 412-438, 8 Sup. Ct. Rep. 475, 28 L. ed. 321; *Stein v. Bienville Water Co.,* 141 U. S. 67-80, 11 Sup. Ct. Rep. 892, 35 L. ed. 622; *Fertilizer Co. v. Hyde Park,* 97 U. S. 666, 24 L. ed. 1038; *Central Trust Co. v. Pullman C. Co.,* 139 U. S. 24-49, 11 Sup.

Ct. Rep. 478, 35 L. ed. 55.) The rule that a grant by the United States is strictly construed against the grantee applies as well to grants to a state in aid in building railroads as to one granting special privileges to a private corporation. (Black's Interpretation of Laws, pp. 210, 211, 316; *Leavenworth L. & G. Co. v. United States,* 92 U. S. 733, 23 L. ed. 634; *Thomas v. Mahan,* 4 Me. 513; *United Society v. Eagle Bank,* 7 Conn. 456.) Under this state of facts, we contend that the appellant did not accept the grant of Congress for a right of way over these particular lands, but prior to the date of that act acquired and accepted its right and title from another source, which would forever estop appellant from accepting or having any benefits from the grant as to these particular lands. Their title to the right of way through these lands rests, not upon the grant, but upon the fee conveyed by the United States to Quigley and Hendricks, and by them conveyed by their quitclaim deed to appellant's grantors. Where a vendee goes into possession under a contract of purchase with the consent of the vendor, it is a general rule that, while he remains in peaceable and undisturbed possession under the contract, he is estopped from disputing the title of the vendor, or setting up an outstanding title in a third party or an adverse title in himself, to defeat the same. (11 Am. & Eng. Ency. of Law, 2d ed., p. 444; *Potts v. Coleman,* 67 Ala. 221; *Munford v. Pearce,* 70 Ala. 452; *Lewis v. Boskin,* 27 Ark. 64; *Sanford v. Cloud,* 17 Fla. 557; *Beall v. Davenport,* 48 Ga. 165, 15 Am. Rep. 656; *Harle v. McCoy,* 7 J. J. Marsh. (Ky.) 318, 23 Am. Dec. 407; *Towne v. Butterfield,* 97 Mass. 105; *Pershing v. Canfield,* 70 Mo. 140; *Harvey v. Morris,* 63 Mo. 475; *Ingraham v. Baldwin,* 9 N. Y. 45; *Wilkins v. Suttles,* 114 N. C. 550, 19 S. E. 606; *Lacy v. Johnson,* 58 Wis. 414, 17 N. W. 246; *McIndoe v. Morman,* 26 Wis. 588, 7 Am. Rep. 96; Herman on Estoppel, sec. 234; *Smith v. Knowles,* 2 Grant Cas. (Pa.) 413; *Lewis v. Castleman,* 27 Tex. 407; *Wright v. Douglas,* 7 N. Y. 564; *Cohoes Co. v. Gross,* 13 Barb. 137; *Moore v. Fitzwater,* 2 Rand. 442; *Fitch v. Baldwin,* 17 Johns. (N. Y.) 161; *Beebe v. Swartwout,* 3 Gilm. 162; *Furness v. Williams,* 11 Ill. 229.) The supreme court of this state has passed

upon this question against the contention of appellant, in the case of *Idaho Land Co. v. Parsons,* 3 Idaho, 450, 31 Pac. 791, from which we quote the following syllabus: "When coterminous owners of land establish a boundary line, and take possession to the line so agreed upon, and one of them erects valuable improvements thereon, and holds quiet and peaceable possession thereof without objection from the other coterminous owner or his grantees, for a period of more than eight years, such line is binding upon them and those holding under them." See, also, supporting the same rule the following cases: *Cavanaugh v. Jackson,* 91 Cal. 583, 27 Pac. 931; *White v. Spreckels,* 75 Cal. 610, 15 Pac. 715; *Cooper v. Vierra,* 59 Cal. 282; *Sneed v. Osborn,* 25 Cal. 619; *Helm v. Wilson,* 76 Cal. 485, 18 Pac. 604; *Blair v. Smith,* 16 Mo. 273; *Orr v. Hadley,* 36 N. H. 575; *Houston v. Sneed,* 15 Tex. 307; *Fisher v. Bennchoff,* 121 Ill. 435, 13 N. E. 150. Independently of any statute of limitations, courts of equity uniformly decline to assist a person who has slept upon his rights and shows no excuse for his laches in asserting them. "A court of equity," says Lord Camden, "has always refused its aid to stale demands, where the party slept upon his rights and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive, and does nothing. Laches and neglect are always discountenanced; and therefore from the beginning of this jurisdiction there was always a limitation to suits in equity in this court." (*Speidel v. Henrici,* 120 U. S. 377-387, 7 Sup. Ct. Rep. 610, 30 L. ed. 718; *Penn Mut. Life Ins. Co. v. Austin,* 168 U. S. 685, 18 Sup. Ct. Rep. 223, 42 L. ed. 627; *Galliher v. Cadwell,* 145 U. S. 368-371, 12 Sup. Ct. Rep. 873, 36 L. ed. 738; *Hammond v. Hopkins,* 143 U. S. 224-250, 12 Sup. Ct. Rep. 418, 36 L. ed. 134; *Williard v. Wood,* 164 U. S. 502-524, 17 Sup. Ct. Rep. 176, 41 L. ed. 531; *Sullivan v. Portland & K. R. R. Co.,* 94 U. S. 806-811, 24 L. ed. 324; *Lansdale v. Smith,* 106 U. S. 391- 394, 1 Sup. Ct. Rep. 350, 27 L. ed. 219; *Whitney v. Fox,* 166 U. S. 637-648, 17 Sup. Ct. Rep. 713, 41 L. ed. 1145; *Abraham v. Ordway,* 158 U. S. 416-423, 15 Sup. Ct. Rep. 894, 39 L. ed. 1136;

*Foster v. Mansfield R. R. Co.,* 146 U. S. 88-102, 13 Sup. Ct. Rep. 28, 36 L. ed. 899; *Townsend v. Vanderwerker,* 160 U. S. 171, 16 Sup. Ct. Rep. 258; *Gildersleeve v. New Mexico Min. Co.,* 161 U. S. 573, 16 Sup. Ct. Rep. 663, 40 L. ed. 812; *Alsop v. Riker,* 155 U. S. 461, 15 Sup. Ct. Rep. 162, 39 L. ed. 223.) Delay in the assertion of a right, unless satisfactorily explained, even when it does not constitute a positive statutory bar, operates in equity as evidence of assent, acquiescence or waiver. (*Chezum v. McBride,* 21 Wash. 558, 58 Pac. 1067-1069; *Mullen's Admrs. v. Carper,* 37 W. Va. 215, 16 S. E. 527; *Parker v. Dacres,* 130 U. S. 43, 9 Sup. Ct. Rep. 433, 32 L. ed. 848; *Richards v. Mackall,* 124 U. S. 183, 8 Sup. Ct. Rep. 437, 31 L. ed. 396; *Horr v. Franch,* 99 Iowa, 73, 68 N. W. 581; *Bryant v. Groves,* 42 W. Va. 10, 24 S. E. 605.) We are aware of the general rule that the owner of the legal title who is in possession may lie by until his possession is invaded or his title attacked, before taking steps to vindicate his rights, but when the party claiming is out of possession, then the defense of laches is always available. (*Conklin v. Wehrman,* 38 Fed. 874; *Hermanns v. Fanning,* 151 Mass. 1, 23 N. E. 493; *Birdsall v. Johnson,* 44 Mich. 134, 6 N. W. 226; *Hatch v. Village of St. Joseph,* 68 Mich. 220, 36 N. W. 36; *Bausman v. Kelley,* 38 Minn. 197, 8 Am. St. Rep. 661, 36 N. W. 333; *Haskins v. Wallet,* 63 Tex. 213; *Rudland v. Mastic,* 77 Fed. 688.) If a party claiming to have an equitable title to lands is out of possession, his equitable right will be barred if he fails to take steps within a reasonable time to establish it, unless he can show an actual hindrance or impediment caused by fraud or concealment of the party in possession. (*Hall v. Law,* 102 U. S. 461, 26 L. ed. 217; *Speidel v. Henrici,* 120 U. S. 377, 7 Sup. Ct. Rep. 610, 30 L. ed. 718; *Underwood v. Dugan,* 24 Fed. 74; *Comer v. Comer,* 119 Ill. 170, 8 N. E. 796; *Ross v. Payson,* 160 Ill. 349, 43 N. E. 399; *Weiss v. Bethel,* 8 Or. 522; *Hines v. Thorn,* 57 Tex. 98; *Taylor v. Whitney,* 56 Minn. 386, 57 N. W. 937.)

AILSHIE, J. (After Making Statement of Facts.)—The first question presented for our consideration is: Were the lands in dispute, on June 20, 1878, public lands of the United States

over which Congress had the power to make such disposition as it saw fit by legislative grant?   In this connection it should be remembered that up to that date the settlers, Quigley and Hendricks had performed no act by which to initiate an inchoate right except that of settlement upon the lands.   The power of Congress over the public lands is plenary so long as title thereto remains in the government and no right of property therein has vested in another.   (*Northern Pac. R. R. Co. v. Smith,* 171 U. S. 268, 18 Sup. Ct. Rep. 794, 43 L. ed. 160; *Norton v. Evans,* 82 Fed. 806, 27 C. C. A. 168; *Frisbie v. Whitney,* 9 Wall. 187, 19 L. ed. 668; *The Yosemite Valley Case,* 15 Wall. 77, 21 L. ed. 82; *Campbell v. Wade,* 132 U. S. 34, 10 Sup. Ct. Rep. 9, 33 L. ed. 240; *Buxton v. Traver,* 130 U. S. 232, 9 Sup. Ct. Rep. 509, 32 L. ed. 920.)

It appears to have been uniformly held by the federal courts that an entry in the proper land office does not create any vested right in the entrymen as against the United States, and that Congress may by subsequent legislation dispose of the land to anyone, notwithstanding such entry.   (*King v. M'Andrews,* 111 Fed. 871, 50 C. C. A. 29; *Norton v. Evans, supra; Northern Pac. R. R. Co. v. Smith, supra; Frisbie v. Whitney,* 9 Wall. 187-196, 19 L. ed. 668; *Wagstaff v. Collins,* 97 Fed. 3, 38 C. C. A. 19; *Campbell v. Wade, supra; Shiver v. United States,* 159 U. S. 491, 16 Sup. Ct. Rep. 54, 40 L. ed. 231; *Southern Pac. Co. v. Burr,* 86 Cal. 279, 24 Pac. 1032.)   In the light of these authorities there is no room for doubt but that Congress had unrestricted power of disposition over these lands on June 20, 1878.

Of course, while it is the rule that no vested right is acquired as against the United States until all the prerequisites for acquirement of title have been complied with, it still remains true that parties may as against each other acquire a preference right to take title to the public lands, and in all such cases the first in time is first in right.   (*Ard v. Brandon,* 156 U. S. 537, 15 Sup. Ct. Rep. 406, 39 L. ed. 526; *Northern Pac. R. R. Co. v. Colburn,* 164 U. S. 383, 17 Sup. Ct. Rep. 98, 41 L. ed. 480; *Frisbie v. Whitney, supra; The Yosemite Valley Case, supra.*)

In the consideration of this question it should be borne in

mind that the line of authorities holding that the lands which have been settled upon with a view to pre-emption or homestead are no longer public lands, are cases arising over land grants in aid of the construction of roads or indemnity lands therefor, and not over rights of way. In those grants, Congress has in most, if not all, cases limited the right of the railroad company to such lands as have not been occupied by bona fide settlers, or to which no homestead rights have attached or been initiated. (*Nelson v. Northern Pac. R. R. Co.*, 188 U. S. 108, 23 Sup. Ct. Rep. 302, 47 L. ed. 406.) And the courts have held in such cases that the right of the settler might be initiated at any time prior to the filing the map of definite location, or, as held in some cases, the actual construction of the road. No such reservation or exception, however, appears to have been made in any of the acts granting rights of way alone. (*St. Joseph etc. R. R. Co. v. Baldwin*, 103 U. S. 426, 26 L. ed. 578.)

It is next urged by respondents that no right vested in the railway company upon the passage and approval of the act, but that the vesting of title to the right of way was dependent upon the filing of a map of definite location as provided by section 4 of the act of March 3, 1873. There could be only two purposes served by the filing of the map under the provisions of this section; the one for the information of the government and its land office officials to apprise them of the occupation and disposition of the public lands belonging to the government; the other purpose for the information of settlers and purchasers who desire to acquire rights in such public lands. In this case the government is not complaining of such failure, and it does not appear upon what theory a settler can be heard to complain of the failure to perform an act by another which is solely for the information and benefit of the government. If, on the other hand, such failure has deprived the individual of any of his rights or hindered him in the acquisition of any interest which he might otherwise have acquired, then he would certainly have a right to urge such objection. In this case the railroad was actually constructed over the land, and was being operated at the date of the passage of the act of June 20, 1878, and constituted actual, rather than constructive, notice to Quig-

ley and Hendricks, and all the rest of the world, as to the exact location of this right of way. By the actual location of the track upon the ground they were saved the necessity of consulting records and files of the land office in order to ascertain the definite location of such road. The road having been constructed prior to the passage of the act, the filing thereafter of a map of definite location could serve no one except the government.

In *Jamestown etc. R. R. Co. v. Jones,* 177 U. S. 125, 20 Sup. Ct. Rep. 568, 44 L. ed. 700, it was held that the grant of a right of way to the plaintiff which required the filing of such maps with the Secretary of the Interior was complied with, so far as the settler was concerned, upon the actual construction of the road, and that the entry of the defendant was subject thereto.

The grant for right of way became definitely fixed by the actual construction of the road as effectually as it could have been by the filing of a map of location. It ceased to be a floating grant as soon as the road was constructed, and no one could thereafter be misled as to the exact situs of the right of way. Every person thereafter acquiring title to any of the public lands through which this line of road was then constructed, took the same subject to the right of way granted by the act of June 20, 1878. (*St. Joseph etc. R. R. Co. v. Baldwin,* 103 U. S. 426, 26 L. ed. 579; *Bybee v. Oregon etc. R. R. Co.,* 139 U. S. 663, 11 Sup. Ct. Rep. 641, 35 L. ed. 309; *Doran v. Central P. R. R. Co.,* 24 Cal. 246.)

It is also contended in this case that notwithstanding the grant of the two hundred foot right of way, the railroad company cannot take a decree quieting title to more than it occupies and uses, or is actually necessary for the use for which the grant was made. We do not think this position can be sustained. Under these grants, the question of the reasonable amount of land necessary for such use is not open to consideration and determination by the courts. The grant by Congress to the Utah and Northern Railway Company of a right of way one hundred feet on each side of the central line of its track was a conclusive determination of the reasonable and neces-

sary quantity of land to be dedicated to such use, and carried with it the right of possession in the grantee therein named and its successor. (*Northern Pac. R. R. Co. v. Smith, supra; Southern Pac. Co. v. Burr, supra; New Mexico v. United States Trust Co.,* 172 U. S. 171, 19 Sup. Ct. Rep. 128, 43 L. ed. 412.)

Respondents have devoted much space in their briefs to the contention that the appellant's predecessor in interest, Gould, having taken deeds from Quigley and Hendricks to a sixty-six foot right of way, is therefore estopped at this time to deny the grantor's right or title. At the time the deed was executed it only conveyed to the grantee, Gould, the right of possession, for the reason that neither party had, or claimed to have, at that time any right or title in the property, other than a right of possession at sufferance of the government. Neither party having any title, Quigley and Hendricks, being in possession, could maintain such possession as against Gould and the railroad company until such time as the latter might acquire a better right and title from the owner of the fee. Under the deed the grantee took a perpetual right of way so far as the grantor was able to convey, and the grantee was placed under no obligations to acknowledge his grantor as landlord, or ever at any time restore to him the possession so acquired.

As a general proposition of law, the grantee named in a deed of conveyance does not hold in privity with his grantor, but rather holds adversely to the grantor, and is not estopped to deny the title of his grantor. (*Bybee v. Oregon etc. R. R. Co., supra; Merryman v. Bourne,* 9 Wall. 592, 19 L. ed. 683; *Robertson v. Pickrell,* 109 U. S. 608, 3 Sup. Ct. Rep. 407, 27 L. ed. 1049; 11 Am. & Eng. Ency. of Law, 2d ed., 400, 440; 3 Washburn on Real Property, 6th ed., sec. 1914; *Schuler v. Ford, ante,* p. 739, 80 Pac. 219.) To this rule, as to most all other general rules, there are exceptions, but no reason has been called to our attention why this case should come under any of the exceptions to the general rule and the doctrine of estoppel be applied to the grantee named in the general deed of conveyance. The grantors have lost nothing by the transaction, nor have they been prejudiced in any of their rights or lulled to repose by any act of the grantee. On the contrary, they have

profited by the transaction to the extent of the purchase price, which they received for the execution of the quitclaim deeds.

It is finally argued by respondent that this action is barred by the statute of limitations, in that the defendants and their predecessors in interest have been in the adverse possession of the whole of this right of way, except the sixty-six feet granted by their quitclaim deed, for the period of twenty-seven years last past, and that the plaintiff is therefore barred from the prosecution of the action. It is also claimed that in addition to the defense of the bar of the statute, that the plaintiff is guilty of such laches in the assertion of his claim that he can no longer be heard in a court of equity. While the defendants and their predecessors have been in the actual possession of the premises, and continued to cultivate the same, still the case does not present all the facts going to constitute adverse possession. But as we read the authorities, there are potent reasons why the bar of the statute and the plea of adverse possession cannot prevail in a case of this kind. This grant by Congress of a right of way is not an absolute fee for all purposes, but is in the nature of a conditional grant, and limited to use and occupation by the grantee and its successors and assigns for the purposes of maintaining and operating a railroad. The franchise and the right of way in such case are inseparably attached to each other while in the possession and under the control and management of the grantee and its successors. The company could not by its grant convey any part of its right of way in any manner that would sever the right of possession from the franchise to operate and maintain a railway line thereover. (*Northern Pac. R. R. Co. v. Townsend,* 190 U. S. 267, 23 Sup. Ct. Rep. 671, 47 L. ed. 1044; *East Alabama R. Co. v. Doe,* 114 U. S. 340, 5 Sup. Ct. Rep. 869, 29 L. ed. 136; *Yellow River Improvement Co. v. Wood County,* 81 Wis. 554, 51 N. W. 1004, 17 L. R. A. 92; *In re Canada Southern Ry. Co.,* 20 Am. & Eng. R. R. Cas. 196; *Union Pac. Ry. Co. v. Kindred,* 43 Kan. 134, 23 Pac. 112; *East Tennessee etc. G. R. Co. v. Telford's Exrs.,* 89 Tenn. 293, 14 S. W. 776, 10 L. R. A. 855; *Northern Pac. R. R. Co. v. City of Spokane,* 56 Fed. 917.) And if it could not do so by its solemn grant it certainly could not do so by any act which might be con-

strued into a recognition of adverse possession. It must follow that the statute of limitations does not run in such cases against an action to maintain the integrity of such a right of way. (*Southern Pac. R. R. Co. v. Hyatt,* 132 Cal. 240, 64 Pac. 272, 54 L. R. A. 522.)

The contention that the plaintiff has mistaken its remedy and that an action to quiet title will not lie in a case like this, is answered by this court adversely to respondent in *Johnson v. Hurst, ante,* p. 308, 77 Pac. 791; *Shields v. Johnson, ante,* p. 576, 79 Pac. 391; *Fry v. Summers,* 4 Idaho, 424, 3 Pac. 1118. It follows, therefore, from what has been said, that the judgment of the trial court must be reversed, and it is so ordered, and the cause is remanded, with directions to make and file conclusions of law in harmony with the views herein expressed, and enter judgment in accordance therewith. Costs awarded to appellant.

Stockslager, C. J., and Sullivan, J., concur.