## CAMPBELL *v.* WADE.

ERROR TO THE SUPREME COURT OF THE STATE OF TEXAS.

No. 20. Argued October 18, 1889. — Decided October 28, 1889.

The statutes of the State of Texas of July 14, 1879, and March 11, 1881, providing for the sale of a portion of the vacant and unappropriated public lands of the State, did not operate to confer upon a person making application under them for a survey of part of said lands and paying the fees for filing and recording the same, a vested interest in such lands which could not be impaired by the subsequent withdrawal of them from sale under the provisions of the statute of January 22, 1883.

THE case was thus stated by the court in its opinion:

This case comes from the Supreme Court of Texas, and arises upon the following facts: By an act of that State, passed on the 14th of July, 1879, the sale of a portion of its vacant and unappropriated public lands within certain counties and what was known as the Pacific Railway reservation was authorized. (Laws of 1879, Special Session, c. 52.) It provided that any person, firm or corporation desirous of purchasing any of those lands might do so by having the same surveyed by the authorized public surveyor of the county or district in which the land was situated. And it was made the duty of the surveyor, upon the application of a responsible party designating the lands desired, to make the survey within three months from its date, and within sixty days thereafter to certify to, record and map the field-notes of the survey, and file them in the General Land Office. The act provided that within sixty days after the filing of these papers in the General Land Office, it should be the right of the person, firm or corporation at whose instance the lands had been surveyed to pay into the treasury of the State the purchase-money therefor, at the rate of fifty cents per acre, and that upon presentation to the General Land Office of the receipt of the state treasurer for this money, the commissioner should issue to such person, firm or corporation a patent for the lands. And the act declared that after the survey of any of the public domain as thus authorized, it should not be lawful for any person to file or locate upon the land thus surveyed.

It was under these provisions, amended by an act passed March 11, 1881, (Laws of 1881, c. 33,) which, however, did not materially affect them in the particulars under consideration, that the petitioner below, the appellant here, who was a responsible person, sought to purchase lands situated in El Paso County of the State, to the extent of one hundred and fifteen thousand acres, in tracts of six hundred and forty acres each. For that purpose, on the 16th of December, 1882, he applied to the surveyor of the county for the lands, which were fully described, and were of the character authorized to be sold

under the acts in question within the Pacific Railway reservation. The surveyor received, filed and recorded the application. The petitioner paid the fees for such filing and recording, and demanded that the land should be surveyed for him as required by law. No such survey was, however, made by the surveyor, and on the 22d of January, 1883, before the time expired within which he was allowed to make it, the legislature of the State withdrew from sale all the public lands mentioned in the acts in question. (Laws of 1883, c. 3.) After this withdrawal, the petitioner again applied to the surveyor for a survey of the lands, and tendered him the legal fees for making the survey, but the surveyor refused to make it, on the ground that the act of July 14, 1879, authorizing the sale, and the amendatory act of March 11, 1881, had been suspended by the act passed January 22, 1883, and consequently that he had no authority to make the survey. The petitioner thereupon presented to the District Court of the county of El Paso a petition for a mandamus to compel the surveyor or his successor in office to make the survey and return the field-notes of it to the General Land Office of Texas. The surveyor appeared in the suit, and filed both an answer and a demurrer to the petition, a procedure permitted, as we understand, under the laws of that State. The demurrer was on the ground that the petition disclosed no cause of action. The answer was a general denial of the allegations of the petition. Upon the trial which followed, the court sitting without the intervention of a jury, judgment was given in favor of the defendant. An appeal being taken, the case was heard by the Commissioners of Appeals. Upon their report the judgment was affirmed by the Supreme Court. To review that judgment the case is brought here on writ of error.

When the petition was filed in the District Court of the State, and its judgment rendered, Ward B. Marchand was the surveyor of El Paso County. Pending the appeal from the judgment he died, and his successor in office, Samuel. H. Wade, was, by consent of parties, substituted in his place as defendant.

*Mr. John B. Rector* for plaintiff in error.

No appearance for defendant in error.

Mr. Justice Field, after stating the case, delivered the opinion of the court.

It was contended in the state courts, and the contention is renewed here, that the petitioner, by his application for a survey, had acquired a vested interest in the lands he desired to purchase, which could not be impaired by their subsequent withdrawal from sale. This position is clearly untenable. The application was only one of different steps, all of which were necessary to be performed before the applicant could acquire any right against the State. The application was to be followed by a survey, and the surveyor was allowed three months in which to make it. By the express terms of the act, it was only after the return and filing in the General Land Office of the surveyor's certificate, map and field-notes of the survey, that the applicant acquired the right to purchase the land by paying the purchase-money within sixty days thereafter. But for this declaration of the act, we might doubt whether a right to purchase could be considered as conferred by the mere survey so as to bind the State. Clearly, there was no such right in advance of the survey. The State was under no obligation to continue the law in force because of the application of any one to purchase. It entered into no such contract with the public. The application did not bind the applicant to proceed any further in the matter; nor, in the absence of other proceedings, could it bind the State to sell the lands.

The adjudications are numerous where the withdrawal from sale by the government of lands previously opened to sale has been adjudged to· put an end to proceedings instituted for their acquisition. Thus, under the preëmption laws of the United States, large portions of the public domain are opened to settlement and sale, and parties having the requisite qualifications are allowed to acquire the title to tracts of. a specific

amount by occupation and improvement, and their entry at the appropriate land office and payment of the prescribed price. But it has always been held that occupation and improvement of the tracts desired, with a view to preëmption, though absolutely essential for that purpose, do not confer upon the settler any right in the land occupied as against the United States, which could impair in any respect the power of Congress to withdraw the land from sale for the uses of the government, or to dispose of the same to other parties. This subject was fully considered in *Frisbie* v. *Whitney*, 9 Wall. 187, where this doctrine was announced. It was subsequently affirmed in the *Yosemite Valley Case*, 15 Wall. 77, 87, where the court said that until all the preliminary steps prescribed by law for the acquisition of the property were complied with, the settler did not obtain any title against the United States, and that among these were entry of the land at the appropriate land office and payment of its price. "Until such payment and entry," the court said, "the acts of Congress give to the settler only a privilege of preëmption in case the lands are offered for sale in the usual manner; that is, the privilege to purchase them in that event in preference to others. The United States by those acts enter into no contract with the settler, and incur no obligation to any one that the land occupied by him shall ever be put up for sale. They simply declare that in case any of their lands are thrown open for sale the privilege to purchase them in limited quantities, at fixed prices, shall be first given to parties who have settled upon and improved them."

In the present case, before the act withdrawing the lands from sale, which was equivalent to a repeal of the act authorizing the sale, could be held to impair any vested right of the applicant, he must have done everything required by law to secure such right. Until then no contract could arise in any way binding upon the State. No contract rights of the petitioner were therefore violated by its legislation.

The law in this respect is very clearly stated in the opinion of the Commissioners of Appeals of Texas, adopted by the Supreme Court of that State.

*Judgment affirmed.*