## RUSSIAN-AMERICAN PACKING COMPANY v. UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

Nos. 85, 86. Argued November 29, 1905.—Decided December 18, 1905.

Appellant without authority settled on a tract of land on Afognak Island, Alaska, prior to 1891, and erected a cannery. After the act of March 3, 1891, 26 Stat. 1100, it applied for a survey of the land occupied by it and deposited the money therefor. The survey was made, approved and forwarded to the Commissioner of the General Land Office. On December 24, 1892, the President, under provisions of the said act of March 3, 1891, by proclamation, declared the whole island reserved for fish culture. The survey was rejected on that and other grounds and appellant was ordered to leave the island, which it did. Thereupon it sued in the Court of Claims for value of its improvements and for loss of business. The claim was disallowed except for cost of survey. In affirming the judgment *held* that:

The mere settlement upon public lands and making improvements thereon without taking some steps required by law to initiate the settler's right thereto, is wholly inoperative as against the United States.

This rule is not affected as to lands in Alaska by any provisions of the act of May 17, 1884, 23 Stat. 24, providing a civil government for Alaska.

Although the occupation and cultivation of public lands with a view to preëmption confers a preference over others in the purchase of such lands by the *bona fide* settler which will enable him to protect his possession against other individuals, it does not confer any vested rights as against the United States.

Under the preëmption laws a purchaser availing of the provisions of the act of March 3, 1891, to purchase land in Alaska acquires no vested rights by the mere deposit for the survey or until the purchase price is paid to, and receipt given therefor by, the proper land officer, and until this is done Congress may withdraw the land from entry and sale although inchoate rights of settlers may be defeated.

The provisions of § 14 of the act of March 3, 1891, authorized the reservation of the land for fish culture, and the exercise of this reserved power terminated all the rights of one who as a mere trespasser had settled thereon and made improvements prior to the passage of the act.

THIS is an appeal from a judgment of the Court of Claims, rejecting a claim of the Russian-American Packing Company

for the value of certain improvements erected by it on the is-
land of Afognak, off the coast of Alaska.  The Packing Com-
pany was incorporated in 1889, under the laws of California,
for the purpose of carrying on the business of packing salmon
on the island of Afognak; and for that purpose purchased and
shipped materials for a cannery and buildings to be used in can-
ning salmon, and also, without authority or license from the
United States, took possession of a tract of about 159.52 acres
of land, and erected thereon buildings, machinery, etc., at a
cost of about $45,000.  Prior to this time no one had been in
possession of this tract.  Claimants remained in possession for
four years, and until December 24, 1892, and carried on a can-
ning business at a profit of about $100,000, about $35,000 of
which was subsequent to the passage of the act of March 3,
1891.

On April 1, 1892, claimant applied to the Surveyor General
for a survey of the tract, under the act of 1891, and deposited
in the subtreasury at San Francisco $433.80, as the estimated
cost of such survey.  The survey was made, was approved
March 15, 1893, and forwarded to the Commissioner of the
General Land Office.  Prior to December 24, 1892, the tract
so occupied had not been reserved by the United States for
fish culture, or any other purpose; nor had the same been pur-
chased or applied for by any other person.  On that day the
President issued a proclamation declaring the whole island re-
served for the purpose of establishing thereon a United States
fish culture station, and warned all persons to depart there-
from.  In July, 1893, claimant was informed of this procla-
mation by agents of the Government, and ordered to leave the
island, which it did, and has not returned thereto.  On Janu-
ary 15, 1895, the Commissioner of the General Land Office, in
passing upon the survey transmitted to him, addressed a letter
to the Surveyor General, calling attention to the President's
proclamation, and rejected the survey on that ground, as well
as upon the ground that the survey was not in square form, as
required by statute.  No appeal was taken from his decision.

The court found as a conclusion of law that claimant was not entitled to recompense for the value of the improvements, nor for the loss of profits arising from its removal from the island, but was entitled to recover the amount deposited for the expense of the survey.

*Mr. Alexander Britton*, with whom *Mr. Aldis B. Browne* was on the brief, for appellants in this case and in No. 86 argued simultaneously herewith.[1]

The United States is liable to the claimant for the loss of its improvements placed upon the public lands in Alaska under a claim of occupancy, and the loss of its business carried on upon such lands caused by the act of the executive branch of the Government in withdrawing same from disposition and reserving them for public purposes. The Government is so liable, both upon general principles of law and also by virtue of the act of Congress approved May 17, 1884, 23 Stat. 24.

The Packing Company entered upon Afognak Island in the year 1889 and erected many and valuable improvements thereon, relying upon its right of possession and its belief that Congress would by future legislation provide a means whereby it and other claimants to public lands in Alaska could obtain title thereto. Congress did enact such legislation by the act of March 3, 1891, 26 Stat. 1095.

The *Yosemite Valley Case*, 15 Wall. 77, does not apply. See *Lytle* v. *Arkansas*, 9 How. 333.

The declaration in § 8 of the act of May 17, 1884, was a solemn assurance by Congress that the persons in possession of the public lands of Alaska should be permitted to acquire title thereto without being disturbed in their possession. It was in the nature of a statutory contract whereby the United States obligated itself to protect the settlers of Alaska and confer upon them title to the lands occupied by them without the danger of any interference or molestations by others, even the

---

[1] *Royal Packing Company* v. *United States*, p. 579 *post.*

United States itself. *Young* v. *Goldsteen,* 97 Fed. Rep. 303; *United States* v. *Tichenor,* 8 Sawyer, 142, 152.

This contractual obligation of the Government under the act of 1884 was similar to its obligations under an Indian treaty. *United States* v. *Carpenter,* 111 U. S. 347.

All acts of Congress providing means of disposing of its vacant public lands are in the nature of contracts, obligating the United States to grant the individual a patent whenever he has complied with the provisions of law in that particular case. Whenever the individual, in good faith, initiates a claim by settlement, occupation and improvements, he thereby acquires an inchoate right, which must ripen into a perfect title, whenever he has completed his period of residence, amount of cultivation, or other specific requirement of the law. *Stark* v. *Stars,* 6 Wall. 415; *Garland* v. *Wynne,* 20 How. 6; *Lindsay* v. *Hawks,* 2 Black, 554; *Landes* v. *Brandt,* 10 How. 348, 372; *Gibson* v. *Choteau,* 13 Wall. 92, 100; *Land Company* v. *Rush,* 168 U. S. 589; *In re. Hastings & Dakota Ry.,* 18 L. D. 511, 518; *Hagen* v. *Nor. Pac. Ry.,* 26 S. Dak. 312; *Wilcox* v. *Jackson,* 13 Pet. 498, 513; *L. L. & G. Ry.* v. *United States,* 92 U. S. 733; *Newhall* v. *Sanger,* 92 U. S. 761; *Cornelius* v. *Kessel,* 128 U. S. 456; *Brown* v. *Hitchcock,* 173 U. S. 478.

It is contrary to the most elementary principles of public land law to say that patent alone can divest the United States of the power of disposing of land, and it is equally erroneous to say that no reciprocal obligation exists unless the United States can force the individual claimant to complete his claim by actual payment for the land. Every act of Congress authorizing settlement upon or entry of its vacant public lands holds out the obligation of the Government to grant the patent. The actual settlement, the occupation and improvement of the land, are the material factors, and rights are thereby acquired which the United States cannot and will not repudiate. *Osborn* v. *United States,* 33 C. Cl. 304; and see General Circular, Land Department, June 3, 1891, promulgating regulations under the act of March 3, 1891.

The deposit which was made was in excess of the purchase price of the land, and thus was a complete compliance by the claimant with each and every requirement of the law, and brings it well within the decisions cited *supra*.

*Mr. Frederick De C. Faust,* special attorney, with whom *Mr. Assistant Attorney General Pradt* was on the brief, for the United States in this case and in No. 86.

The mere fact of the entry by appellant upon these lands five years after the passage of the act of 1884, created no contractual obligation under said act on the part of the United States to convey title to the same or to respond in damages for failure so to do.

*Young* v. *Goldsteen,* 97 Fed. Rep. 303, does not sustain appellant's contention. When the appellant occupied these lands in 1889 and erected its improvements thereon it did so not only without authority or license under the act of 1884, but in the face of an express warning by Congress that nothing in the act should be construed as a promise or agreement to put in force in that district the general land laws of the United States.

Appellant cannot recover under any provision in the act of 1891. Under that act the President had authority to withdraw Afognak Island and appellant settled thereon with knowledge of that fact. The contention of appellant that acts of Congress as to disposal of public lands are contracts does not avail as the act itself reserved this right to withdraw the island from sale, and appellant's acts were done with knowledge of that power after the act, and it was a mere trespasser before that time. *Yosemite Valley Case,* 15 Wall. 77, 87; *Frisbie* v. *Whitney,* 9 Wall. 187, 194; *United States* v. *Braddock,* 50 Fed. Rep. 669; 8 Ops. Atty. Genl. 72; 10 Ops. Atty. Genl. 57; 11 Ops. Atty. Genl. 462. *Lytle* v. *Arkansas,* 9 How. 333 distinguished. Appellants acquired no vested interest that could not be impaired by a subsequent withdrawal of the land for sale. *Rector* v. *Ashley,* 6 Wall. 151; *Campbell* v. *Wade,* 132 U. S. 37.

Appellant's contention that the deposit was in excess of the

total price of the lands, and so constituted payment of the pur- chase price, is wholly without merit. The deposit was made, not as payment for the land, but solely to pay, first, the esti- mated cost of making the survey, and, second, the estimated cost of the clerical work necessary to be done in the office of the *ex officio* surveyor-general. This was the only object of the deposit, and it was required before the *ex officio* surveyor- general was empowered to even authorize the survey to be made. Where the amount thus deposited is greater than the cost of the land, the triplicate certificate may thereafter at the final stage of the proceedings be surrendered in payment of the land, but it becomes available for this purpose only after all the other requirements had been fully complied with under the act. Rev. Stat. § 2403.

The United States derived no benefit whatever from the erec- tion of these buildings. The appellant company has not at- tempted to sell or otherwise dispose of or to remove the build- ings from this land.

MR. JUSTICE BROWN, after making the foregoing statement, delivered the opinion of the court.

It is well understood that the mere settlement upon public lands without taking some steps required by law to initiate the settler's right thereto, is wholly inoperative as against the Uni- ted States. *Lansdale* v. *Daniels,* 100 U. S. 113, 116; *Maddox* v. *Burnham,* 156 U. S. 544; *Northern Pacific R. R. Co.* v. *Col- burn,* 164 U. S. 383.

Petitioner, however, bases its right to recover upon certain statutes which, it is insisted, recognized the right of the peti- tioner to settle upon this island and make the improvements in question. The first of these is the act of May 17, 1884, "pro- viding a civil government for Alaska," (23 Stat. 24), wherein it was enacted by section 8 "that the Indians or other persons in said District shall not be disturbed in the possession of any lands actually in their use or occupation, or *now* claimed by

them but the terms under which such persons may acquire title to such lands is reserved for future legislation by Congress."

It is quite clear that this section simply recognized the rights of such Indians or other persons as were in possession of lands at the time of the passage of the act, and reserved to them the power to acquire title thereto after future legislation had been enacted by Congress. As the petitioner did not take possession of this land until five years after the act of 1884 was passed, it was a mere trespasser and not in a position to avail itself of any contract which might be extorted from the language of the act in favor of the Indians or other persons who might have been in possession of the land at the passage of the act.

That this act was intended merely as a preliminary to future legislation and for the temporary protection of Indians and other settlers is made more manifest by section 12 of the same act:

"That the Secretary of the Interior shall select two of the officers to be appointed under this act, who, together with the Governor, shall constitute a commission to examine into and report upon the condition of the Indians residing in said Territory, what lands, if any, should be reserved for their use, what provision shall be made for their education, what rights by occupation of settlers should be recognized, and all other facts that may be necessary to enable Congress to determine what limitations or conditions should be imposed when the land laws of the United States shall be extended to said District."

So far from Congress intending by this act to invite a settlement upon public lands in Alaska, a contrary inference arises from a subsequent clause of section 8, that "nothing contained in this act shall be construed to put in force in said District the general land laws of the United States."

We come now to the act of March 3, 1891, 26 Stat. 1095, 1100, section 12 of which provides:

"SEC. 12. That any citizen of the United States twenty-one years of age, and any association of such citizens, and any incorporation incorporated under the laws of the United States, or of any State or Territory of the United States, now author-

ized by law to hold lands in the Territories now or hereafter in possession of and occupying public lands in Alaska for the purpose of trade or manufactures, may purchase not exceeding one hundred and sixty acres, to be taken as near as practicable in a square form, of such land at two dollars and fifty cents per acre.` . . ."

Section 13 provides for a survey, a deposit of the cost of such survey, a report to the Commissioner of the General Land Office, and an approval by him of the survey, and for the final issue of the patent. Section 14 of the act is important, and reads as follows:

"Sec. 14. That none of the provisions of the last two preceding sections of this act shall be so construed as to warrant the sale of any lands belonging to the United States . . . to which the natives of Alaska have prior rights by virtue of actual occupation, or which shall be selected by the United States Commissioner of Fish and Fisheries on the island of Kadiak and Afognak for the purpose of establishing fish-culture stations. . . . And there shall be reserved in all patents issued under the provisions of the last two preceding sections the right of the United States to regulate the taking of salmon and to do all things necessary to protect and prevent the destruction of salmon in all the waters of the lands granted frequented by salmon."

Even if section 14 had not been enacted, it would not follow that petitioner, by sections 12 and 13, became entitled to a patent of the United States by procuring a survey of such lands. We have had occasion in several cases to hold that, although the occupation and cultivation of public lands with a view to preëmption confers a preference over others in the purchase of such lands by the *bona fide* settler, which will enable him to protect his possession against other individuals, it does not confer a vested right as against the United States in the land so occupied. Such a vested right, under the preëmption laws, is only obtained when the purchase money has been paid, and receipt from the proper land officer given to the purchaser.

Until this has been done it is competent for Congress to withdraw the land from entry and sale, though this may defeat the inchoate right of the settler. *Frisbie* v. *Whitney*, 9 Wall. 187. When this payment is made, the other prerequisites having been complied with, the settler is then entitled to a certificate of entry from the local Land Office and ultimately to a patent. *The Yosemite Valley Case*, 15 Wall. 77, 87; *Campbell* v. *Wade*, 132 U. S. 34, 38; *Shiver* v. *United States*, 159 U. S. 491.

The case of *Lytle* v. *Arkansas*, 9 How. 314, is much relied upon by the petitioner, and is carefully criticised and distinguished by Mr. Justice Field in the *Yosemite Valley case*. In that case proofs were taken and decided both by the Register and the Receiver of the Land Office to be sufficient, and the money was *paid* by the claimant, and received by the Commissioner; but through misconduct or neglect the Register refused afterward to permit claimant to enter the section, and it was held that the right of the preëmptor thus acquired could not be impaired by a selection of land by a subsequent act of Congress. Commenting on this case Mr. Justice Field observed in the *Yosemite Valley case* (p. 93) that:

"The whole difficulty in the argument of the defendant's counsel arises from his confounding the distinction made in all cases, whenever necessary for their decision, between the acquisition by the settler of a legal right to the land occupied by him as against the owner, the United States; and the acquisition by him of a legal right as against other parties to be preferred in its purchase, when the United States have determined to sell. It seems to us little less than absurd to say that a settler or any other person by acquiring a right to be preferred in the purchase of property, provided a sale is made by the owner, thereby acquires the right to compel the owner to sell, or such an interest in the property as to deprive the owner of the power to control its disposition."

But if there were any doubt regarding the rights of the petitioner in connection with the above case, they are completely resolved by the language of section 14 of the act, which declares

that the provisions of the preceding sections shall not be so construed as to warrant the sales of any lands belonging to the United States which shall be reserved for public purposes, or selected by the Commissioner of Fish and Fisheries on the islands of Kadiak and Afognak, for the purposes of establishing a fish-culture station. As the President exercised the rights thus reserved, and declared the whole island appropriated for the purpose of establishing a fish-culture station, and warned all persons to depart therefrom, it is clear that the rights, if any, previously acquired by the settlement were terminated by the proclamation. Petitioner gained no additional consideration from the improvements put upon the land, since, if for no other reason, these were made prior to the act of 1891, when it was a mere trespasser and occupying the land without a shadow of title.

*Affirmed.*