BERGSTROM v. ALASKA CENT. RY. CO. et al.

(Third Division. Valdez. November 14, 1907.)

No. 103.

1. PUBLIC LANDS (§ 79*)—RAILROADS—TIMBER FOR CONSTRUCTION.

The defendant railroad company filed its preliminary map of the location of its railroad with the Secretary of the Interior on July 15, 1903, and its map of definite location July 10, 1904, and engaged in building the road on its definite line. On April 18, 1904, while the road was in process of construction, the plaintiff settled upon the tract of land in question under the homestead clauses of the following mentioned act, and on July 2, 1904, he filed a notice of his entry in the office of the commissioner and ex officio recorder of the precinct where the land was located. His homestead is but one mile from the 20-mile section of the road under actual construction. The railroad caused timber to be taken from his land for construction purposes. He applied for an injunction. *Held,* under the provisions of "An act extending the homestead laws and providing for right of way for railroads in the district of Alaska, and for other purposes," approved May 14, 1898 (Act May 14, 1898, c. 299, 30 Stat. 409 [U. S. Comp. St. 1901, p. 1575]), that upon the performance of the acts prescribed by statute by the railroad company all the lands of the United States adjacent to the line of the road became charged with the company's right to take timber therefrom; that plaintiff's homestead entry, being subsequent to the attaching of defendant's rights, was charged with defendant's right to take timber therefrom for construction purposes. See Washington Ry. Co. v. Osborn, 160 U. S. 103, 16 Sup. Ct. 219, 40 L. Ed. 356.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 79.*]

2. PUBLIC LANDS (§ 35*)—HOMESTEAD ENTRY.

Before a homestead entryman in Alaska can obtain a vested and exclusive right to his homestead on the public domain, his entry must be completed in the United States land office. The

filing of a notice with the recorder, and occupation and improvement, do not convey vested rights therein.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 76; Dec. Dig. § 35.*]

3. STATUTES (§ 206*)—CONSTRUCTION.

It is a well-known rule for the construction of statutes that the courts shall so interpret the law that every portion shall be effective.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 283; Dec. Dig. § 206*]

Plaintiff by this suit seeks to restrain these defendants, their agents and employés, from going upon a certain tract of land some three miles from the head of Resurrection Bay, in the Seward recording precinct, which he alleges to be his homestead, for the purpose of cutting timber therefrom to be used in the construction of the defendant's railroad. He also seeks to recover damages for the alleged wrongful and unlawful cutting and destruction of standing and growing timber. The defendants answered, setting up, among other matters, their right to take timber under the laws of Alaska, and assert that such right is paramount to any rights which the plaintiff may have in the tract, if any he has therein, which they deny.

Plaintiff did not reply to defendant's answer, but stipulated with defendants to submit the matter to the court upon an agreed statement of facts and briefs. Defendants have filed a brief; but no brief has been filed by plaintiff, though the failure to do so has been called to the attention of his counsel. The statement of facts was agreed upon and filed; but it is by no means as full or complete an exposition of the conditions and facts in the matter as should have been made to enable the court to thoroughly understand the situation. From the statement it appears that the defendants the Alaska Central Railway Company and the Tanana Construction Company are

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

both corporations, duly organized under the laws of the state of Washington, and are authorized to do business in this territory; that on July 15, 1903, the defendant Alaska Central Railway Company duly filed with the Secretary of the Interior a preliminary actual survey and plat of its proposed route; that the survey and plat was on the same day duly approved; that on April 18, 1904, the plaintiff, who possessed the requisite qualifications therefor, went upon the tract of land which he claims as a homestead, and upon which he now resides, and thereon constructed a habitable home; and that since that day he has complied with the homestead laws of the United States applicable to Alaska, requiring improvement and cultivation of and residence upon the tract; and that, on June 2, 1904, he filed for record in the office of the commissioner and ex officio recorder for the Seward recording precinct a notice of location; but that plaintiff has never filed with the United States land office at Juneau a notice of his homestead location.

It also appears from the agreed statement that plaintiff staked the tract in accordance with his notice of location; that, on July 10, 1904, the defendant Alaska Central Railway Company filed with the register of the United States land office at Juneau a duly authenticated map and profile of 20 miles of its road as definitely located; that said 20 miles of road, as indicated by said map and profile, was in process of construction; that the defendant the Tanana Construction Company during all the times mentioned, was under contract with the Alaska Central Railway Company to construct the first 20-mile section of said company's railroad; that neither defendant cut any timber upon lands occupied or settled prior to July 15, 1903; that the defendants cut timber upon said tract after plaintiff's settlement thereon, and after plaintiff had notified defendants' employés of his claim, and had also notified them not to cut timber thereon, and before the commencement of this action; that the point at which said timber was cut is not on or con-

tiguous to the defendants' right of way, but within a mile thereof, and about one-half mile distant from the homestead improvements of plaintiff; that defendants' right of way does not pass through or over the tract claimed by plaintiff, but within about one mile thereof; that at the time plaintiff filed his homestead location and settlement the defendants were constructing a railroad at the head of Resurrection Bay, and that prior to the commencement of this action said railroad had been constructed for a distance of 20 miles from the head of said bay; that the timber cut by defendants, and which is the subject of this action, was "cut for the purpose of using the same in the construction of this railroad."

There is no statement as to whether or not the defendant Alaska Central Railway Company has ever "filed for record with the Secretary of the Interior a copy of its articles of incorporation and due proofs of its organization under the same,"· as required by the act of Congress entitled "An act extending the homestead laws and providing for a right of way for railroads in the district of Alaska," approved May 14, 1898.    30 Stat. p. 409, c. 299.    It is, however, to be presumed that such action was taken, since it is stated that the preliminary survey and plat of the proposed route was approved by the Secretary of the Interior on July 15, 1903.    Neither is it clearly stated upon what portion of the construction of the road the cut timber was used, nor when it was cut, nor that the timber cut was necessary for the construction of the road.

Brown & Smith, for plaintiff.

S. O. Morford, for defendants.

GUNNISON, District Judge.    From the foregoing it appears that on July 15, 1903, the defendant Alaska Central Railway Company by the filing of a preliminary survey and plat, completed the acts necessary to secure to them the benefits of the act of Congress entitled "An act extending the homestead

laws and providing for the right of way for railroads in the district of Alaska, and for other purposes," approved May 14, 1898.   30 Stat. 409.   The language of the statute, so far as it refers to railroad grants, is:

"Sec. 2. That the right of way through the lands of the United States is hereby granted to any railroad company duly organized under the laws of any state or territory, or by the Congress of the United States, which may hereafter file for record with the Secretary of the Interior a copy of its articles of incorporation and the proofs of its organization under the same, to the extent of one hundred feet on each side of the center line of said road; *also the right to take from the lands of the United States adjacent to the line of said road * * * timber necessary for the construction of* said railroad."

"Sec. 4. That any such company, by filing with the Secretary of the Interior a preliminary actual survey and plat of its proposed route, shall have the right at any time within one year thereafter to file the map and profile of definite location provided for in this act, and such preliminary survey and plat, during the period of one year from the time of filing the same, have the effect to render all lands on which said preliminary survey shall pass, subject to such right of way.

"Sec. 5. That any company desiring to secure the benefits of this act shall, within twelve months after filing the preliminary map of location of its road, as hereinbefore provided * * * file with the register of the land office for the district where such land is located a map and profile of at least a twenty mile section of its road, * * * as definitely fixed, and shall thereupon each year definitely locate and file a map of such location, as aforesaid, of not less than twenty miles additional of its line of road, until the entire road has been thus definitely located; and, upon approval thereof, by the Secretary of the Interior, the same shall be noted upon the records of said office, and thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way."

The courts have uniformly held, in construing the act of 1875 (Act March 3, 1875, c. 152, 18 Stat. 482), from which statute the act under consideration is taken almost verbatim, that the act is not to be considered as a grant in præsenti, in-

asmuch as no grantee is named therein, but that the grant becomes effective upon the corporation's complying with the provisions of the act. Jamestown R. R. v. Jones, 177 U. S. 125, 20 Sup. Ct. 568, 44 L. Ed. 698; Hall v. Russell, 101 U. S. 503, 25 L. Ed. 829; Maynard v. Hill, 125 U. S. 215, 8 Sup. Ct. 723, 31 L. Ed. 654; 26 Am. & Eng. Ency. of Law (2d Ed.) 337. It is therefore clear, presuming the defendant Alaska Central Railway Company to have filed with the Secretary of the Interior a copy of its articles of incorporation and proofs of its organization, that when its preliminary actual survey and plat of its approved route, on June 15, 1903, were also filed with the Secretary of the Interior and approved by that official, all lands on which said survey and plat passed became subject to the defendant's right of way for one year.

The controversy here is not, however, over the right of way, but over the defendant's right to take "from the lands of the United States adjacent to the line of said road * * * timber necessary for the construction of their said road." It is a well-known rule for the construction of statutes that the courts shall so interpret the law that every portion be effective. Rice v. Minn. & N. W. R. Co., 1 Black, 358, 17 L. Ed. 147; Platt v. Union Pac. R. R. Co., 99 U. S. 58, 25 L. Ed. 424; 26 Am. & Eng. Ency. of Law (2d Ed.) 518. In the light of this rule, to construe the statute to mean that land of the United States is subjected to the actual "right of way" only would, I think, render a portion of that statute ineffectual. If the land becomes subject to the right of way, it also must become subject to every other and correlative right, and thus, upon the performance of the prescribed acts by the railroad company, all the lands of the United States adjacent to the line of the road become charged with the company's right to take timber therefrom. What are the "lands of the United States"? In the sense in which the phrase is used in this statute, I think "lands of the United States" may be said to be synonymous with "public

lands"; that is, those lands to which the government still retains both the legal and equitable title, or lands which have not been segregated from the public domain to such an extent that the government has passed to another the right to dispose thereof, or over which the government has ceased to exercise control—lands not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights. Do the lands in question from which defendants have cut the timber fall within this category?

So far as it is shown by the record in this case, plaintiff is the only claimant to the lands from which the timber was cut. His right, if any right he has therein, and we are not, we think, called upon in this controversy to pass upon his title thereto, was initiated after the date of his settlement thereon; i. e., April 18, 1904. But for the period of one year from July 15, 1903, the land over which the line of the road passed was subjected to the right of way, and the public lands adjacent thereto were subjected to the defendants' right to take timber necessary for the construction of the road. It is patent, I think, that if these lands were "adjacent to the line" of the defendants' road they must, so far as the rights of these litigants are concerned, be deemed to have been on July 15, 1903, "lands of the United States," subject under the statutory grant to the right of the defendants to take therefrom timber necessary for the construction of said road, for on that day defendants completed the acts necessary to perfect the grant, provided plaintiff's settlement and recording did not deprive defendants of such rights.

The word "adjacent," as used in the acts of Congress granting to railroads the right to take timber from public lands, has been the subject of frequent judicial interpretation. The Supreme Court of the United States, in the case of Stone v. United States, 167 U. S. 178, 17 Sup. Ct. 778, 42 L. Ed. 127, adopts the construction of that word as laid down by Mr. Jus-

tice Brewer in the case of Denver & Rio Grande R. R. Co. v: United States (C. C.) 34 Fed. 838, 841, where he says:

"I certainly do not agree with the idea, which seems to be expressed elsewhere, that the proximity of the land is immaterial, or that Congress intended to grant anything like a general right to take timber from public lands where it is most convenient. The grant is limited to adjacent lands, and I do not appreciate the logic which concludes that, if there is no timber on adjacent lands, the grant reaches out and justifies the taking of timber from distant lands, lands 50 or 100 miles away."

. In a discussion of the subject in 26 Am. & Eng. Ency. of Law (2d Ed.) 454, the text-writer declares that the meaning of the word "adjacent" in this act (i. e., the act of March 3, 1875) is to be determined by the evidence in each particular case," and "that the road is restricted to the use of land, timber, etc., in proximity, contiguous or near the road."

The interpretations of the act of 1875 by the courts are not only useful, but we think controlling, in the construction of this act of 1898, since the two statutes cover the identical subject and the language is similar. It is to be regretted that the statement of facts does not more specifically disclose the situation; but, from a careful examination of it, I think it may be fairly considered that the timber cut from the tract in question was used in the construction of the 20-mile section of road, a portion of which lay within a mile of the spot where the timber was standing. That this comes within the meaning of the word "adjacent" is undoubted.

But when was the timber cut—before the entry of the plaintiff, or after? And what was the effect of the entry upon the defendants' right? Again the statement of facts fails to enlighten the court. But from the fact, already stated, that plaintiff notified defendants' employés not to cut timber upon that tract, it is fair to infer that some was cut prior to plaintiff's settlement. On the other hand, since the plaintiff could have no right whatever until his settlement, defendants must

also have cut timber subsequent to that time, and before the commencement of the action, on January 30, 1905.

Plaintiff's entry was made under the act of Congress approved March 3, 1903 (Act March 3, 1903, c. 1002, 32 Stat. 1028 [U. S. Comp. St. Supp. 1909, p. 549]), and entitled "An act to amend section 1 of the act of Congress approved May 14, 1898, entitled 'An act extending the homestead laws and providing a right of way for railroads in the district of Alaska.' "

On June 2, 1904, within less than 60 days after his entry upon the tract, he filed for record in the recording district in which the land was situated his notice of location. Up to the time of the commencement of this action no notice had been filed in the United States land office for that land district. Whatever may be his right to the land, it rests solely upon his entry or settlement, the staking, improvement, and residence thereon, and the recording of the notice in the recording office.

But the original entry of the homesteader practically amounts to nothing more than a declaration of intention, and, while he thereby obtains an inchoate title, he acquires no vested rights against the government and no ownership in the land. 26 Am. & Eng. Ency. of Law (2d Ed.) 254; Whitney v. Taylor, 158 U. S. 85, 15 Sup. Ct. 796, 39 L. Ed. 906. Before he can obtain any vested right against the government, all the prerequisites for the acquisition of the title as provided by law must have been complied with. A mere occupation and improvement do not convey vested rights, nor do the homestead or pre-emption rights attach until the entry is in the land office. Shepley v. Cowan, 91 U. S. 330, 23 L. Ed. 424; N. P. R. R. v. Colburn, 164 U. S. 383, 17 Sup. Ct. 98, 41 L. Ed. 479; N. P. R. R. v. Smith, 171 U. S. 269, 18 Sup. Ct. 794, 43 L. Ed. 157.

In discussing the nature of the grant to homesteaders, the Supreme Court, in Hall v. Russell, 101 U. S. 503, 25 L. Ed. 829, says:

"If the law making the grant indicate a future grantee and not a present one, the grant will take effect in the future, and not presently. * * * The grant was not to a settler only, but to a settler who had completed the four years of residence, and had otherwise conformed to the act. * * * The act of Congress made the transfer only when the settler brought himself within the description of those designated as grantees. A present right to occupy and maintain possession, so as to acquire a complete title to the soil, was granted to every white person in the territory having the other requisite qualifications; but beyond this nothing passed until all was done that was necessary to entitle the occupant to a grant of the land."

In the case of Maynard v. Hill, supra, the Supreme Court quoted the foregoing. The act of 1903 falls within the lines laid down by this decision. Not only does the entryman obtain no vested rights in the soil, but he may neither cut nor destroy standing timber upon the land, other than to clear the land for cultivation, or for the purpose of obtaining lumber for his buildings or fences. The title remains in the government until he has complied with all the requirements made by the statute. Campbell v. Wade, 132 U. S. 34–38, 10 Sup. Ct. 9, 33 L. Ed. 240; 26 Am. & Eng. Ency. of Law, 254.

From plaintiff's acts, so far as disclosed by the record in this case, no right seems to have been established that is paramount to the rights which the defendant had, nor that superseded defendant's rights previously acquired. When, on July 10, 1904, within the year prescribed by the statute, defendants filed with the register of the land office its map and profile of the 20-mile section as definitely fixed, and such map and profile was approved by the Secretary, the right of way and all other rights under the statutory grant became fixed and permanent in it. The rights which both plaintiff and defendants assert they claim by virtue of statutory grants from the United States. Where such a situation exists under the land laws, it is the rule that priority of right controls. 26 Am. &

Eng. Ency. of Law (2d Ed.) 442. The defendants' rights were initiated many months before the plaintiff went upon the tract, before he had taken any steps whatever to initiate a right, or had signified an intention of accepting the government's offer, before the statute under which he lays claim to the land had been enacted. It is my opinion, then, that the lands from which the defendants cut the timber in question were lands of the United States adjacent to the defendants' line, when defendants' rights were initiated, and that when the plaintiff went upon them they were subject to defendants' rights to take therefrom timber necessary for the construction of its road. Defendants in their answer allege that the timber cut was necessary in the construction of the road. There is no stipulation upon that subject in the agreed statement.

Defendants in their brief attack plaintiff's notice of location, contending that it is void because of various defects. Since the matter in controversy is disposed of upon other grounds, we do not deem it necessary to pass upon the validity of plaintiff's location, and shall not, therefore, consider it.

The suit should be dismissed.