### UNITED STATES v. FICKETT.

(Circuit Court of Appeals, Ninth Circuit. May 5, 1913.)

#### No. 2,127.

PUBLIC LANDS (§ 21*)—SURVEY—INTERFERENCE WITH UNITED STATES OFFICER—UNPATENTED MINING CLAIMS—"PUBLIC LANDS."

Rev. St. 2412 (U. S. Comp. St. 1901, p. 1483), provides that every person, who by threats or force interrupts, hinders, or prevents the survey of any public land, or of any private land claim which is or may be confirmed by the United States, by persons authorized to survey the same, in conformity with the instructions of the Commissioner of the General Land Office, shall be fined. Held, that unpatented mining claims, though claimed to be the property of a mining company, and to which such company might obtain a patent on complying with prescribed conditions, were nevertheless "public lands" of the United States, within such section.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 28; Dec. Dig. § 21.*

For other definitions, see Words and Phrases, vol. 6, pp. 5793–5795; vol. 8, p. 7772.]

F. W. Fickett was indicted for unlawfully interrupting and preventing a United States surveyor from making a survey of certain unpatented mining claims, in violation of Rev. St. § 2412, within the territory of Arizona. A demurrer to the indictment was sustained, and defendant discharged, and, on the territory being made a state, an appeal by the United States was transferred to the Circuit Court of Appeals. Reversed.

The defendant, F. W. Fickett, was indicted on the 23d day of October, 1911, for violating the provisions of section 2412 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 1483). The indictment charged: "That the said F. W. Fickett, late of the First judicial district aforesaid. heretofore, to wit, on or about the thirtieth day of August, A. D. one thousand nine hundred and eleven, and within the First judicial district of the territory of Arizona, and within the county of Pima, in said territory of Arizona, did unlawfully, willfully, and feloniously, by threats and by force, on the part of him, the said defendant, F. W. Fickett, interrupt, hinder, and prevent one Paul E. Fernald from making a survey of public lands of the United States of America, to wit, five certain unpatented mining claims, which said unpatented mining claims were then and there claimed and owned by Old Pueblo Copper Company, a corporation duly organized and existing under and by virtue of the laws of the territory of Arizona, and known and described as follows, to wit: Little Betsy, Battle Axe, Quien Sabe, Quien Sabe No. 2, and Marion mining claims—which said mining claims are situate and being in the Amole mining district, Pima county, Arizona Territory; he, the said Paul E. Fernald, being then and there a person authorized to survey the said public lands in conformity with instructions of the Commissioner of the General Land Office of the United States of America."

The defendant filed a demurrer to the indictment, on the ground that the facts stated therein did not constitute a public offense against the United States, or at all. On the 24th day of October, 1911, the court sustained the demurrer, dismissed the case, and ordered that the defendant be discharged. An appeal from that judgment and order was taken by the United States to the Supreme Court of the territory of Arizona. Before the case was heard in the Supreme Court, the territory was admitted as a state, and the case was thereupon transferred to this court for decision under the provisions of section 33 of the act of Congress approved June 20, 1910 (36 Stat. 557, 577, c. 310).

J. E. Morrison, U. S. Atty., of Bisbee, Ariz., and J. C. Forest, Asst. U. S. Atty., of Phœnix, Ariz.

Samuel L. Kingan, of Tucson, Ariz., for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). The defendant contends that the facts stated in the indictment do not constitute a public offense against the United States, for the reason that the five certain unpatented mining claims therein named and described, being claimed and owned by the Old Pueblo Copper Company, a corporation, are not public lands of the United States, within the meaning of section 2412 of the Revised Statutes. That section is as follows:

"Every person who in any manner, by threats or force, interrupts, hinders, or prevents the surveying of the public lands, or of any private land claim which has been or may be confirmed by the United States, by the persons authorized to survey the same, in conformity with the instructions of the Commissioner of the General Land Office, shall be fined not less than fifty dollars nor more than three thousand dollars, and be imprisoned not less than one year nor more than three years."

Section 2325 of the Revised Statutes, which prescribes the method by which a patent for a mining claim may be obtained, is as follows:

"Any person, association or corporation authorized to locate a claim under this chapter, having claimed and located a piece of land for such purposes, who has, or have, complied with the terms of this chapter, may file in the proper land office an application for a patent, under oath, showing such com-

pliance, together with a plat and field notes of the claim or claims in common, made by or under the direction of the United States Surveyor General, showing accurately the boundaries of the claim or claims. * * *"

By section 453 of the Revised Statutes (U. S. Comp. St. 1901, p. 257) full jurisdiction over the survey and sale of the public lands of the United States is vested in the Commissioner of the General Land Office, subject to the direction of the Secretary of the Interior.

This question has been before the Supreme Court and the Circuit Courts of the United States frequently, in criminal actions brought under section 2461 of the Revised Statutes (U. S. Comp. St. 1901, p. 1527), prohibiting the cutting of timber on lands of the United States; and the courts have uniformly held that, prior to the issuance of a patent, lands belonging to the United States have never ceased to be a part of the public domain to the extent of divesting the government of its control over them, and that (with possible exceptions within which the present case does not come) nothing but a patent can confer upon the settler or claimant a vested right, as against the United States. Shiver v. United States, 159 U. S. 491, 494, 16 Sup. Ct. 54, 40 L. Ed. 231; Stone v. United States, 167 U. S. 178, 191, 17 Sup. Ct. 778, 42 L. Ed. 127; The Timber Cases (D. C.) 11 Fed. 81.

The defendant contends that the unpatented mining claims named in the indictment in this case have ceased to be a part of the public lands of the United States, because they are so far withdrawn from sale as to be no longer subject to appropriation. But this is not the question in issue. The real question is: Are they so far the public lands of the United States, although claimed by a private corporation, that the Commissioner of the General Land Office may continue to exercise over them the powers and duties vested in him by Congress?

In the case of Shiver v. United States, 159 U. S. 491, 494, 16 Sup. Ct. 54, 40 L. Ed. 231, the defendant had been tried and convicted, under section 2461 of the Revised Statutes, for cutting and removing pine trees from a quarter section of land which he had entered as a homestead. One of the questions certified to the Supreme Court of the United States was whether lands duly and properly entered for a homestead, under the homestead laws of the United States, are from the time of entry, and pending proceedings before the Land Department, and until final disposition by that department, so appropriated for special purpose, and so segregated from the public domain, as to be no longer lands of the United States, within the purview and meaning of section 2461 of the Revised Statutes of the United States. Mr. Justice Brown, delivering the opinion of the court, said:

"This case turns upon the question as to what are 'lands of the United States,' within the meaning of Rev. Stat. § 2461, providing for the punishment of persons guilty of cutting timber upon such lands other than for the use of the navy. Obviously the question is not whether such lands are so far withdrawn from sale as to be no longer subject to appropriation by any railroad or other person or corporation to which a land grant has been made, but whether they are still so far the property of the United States that the government may protect itself against an unlawful use of them. Indeed, this court has settled by repeated decisions that the claim of a homestead or pre-emption entry made at any time before filing a map of definite location of a railway prevents the lands covered by such claim from passing to such railway under its land grant, even though such entry be

subsequently abandoned. \* \* \* While these cases indicate that lands once appropriated to a certain purpose thereby cease to be available for another purpose, there is nothing in them to show that the United States loses its title to such lands by the first appropriation, or that they cease to be the property of the government. Upon the contrary, it was said by this court, as early as 1839, in Wilcox v. Jackson, 13 Pet. 498, 516 [10 L. Ed. 264], that, 'with the exception of a few cases, nothing but the patent passes a perfect and consummate title.' So, in Frisbie v. Whitney, 9 Wall. 187, 193 [19 L. Ed. 668], 'there is nothing in the essential nature of these acts' (entering upon lands for the purpose of pre-emption) 'to confer a vested right, or, indeed, any kind of claim, to land, and it is necessary to resort to the pre-emption law to make out any shadow of such right.' In this case, the following extract from an opinion of Attorney General Bates was quoted with approval: 'A mere entry upon land, with continued occupancy and improvement thereof, gives no vested interest in it. It may, however, give, under our national land system, a privilege of pre-emption. But this is only a privilege conferred on the settler to purchase lands in preference to others. His settlement protects him from intrusion or purchase by others, but confers no right against the government.' A number of authorities were cited to the same effect. It was held that it was within the power of Congress to withdraw land which had been pre-empted from entry or sale, though this might defeat the imperfect right of the settler. In the Yosemite Valley Case, 15 Wall. 77 [21 L. Ed. 82], the construction given to the pre-emption law in Frisbie v. Whitney was approved, the court observing (15 Wall. page 88 [21 L. Ed. 82]): 'It is the only construction which preserves a wise control in the government over the public lands and prevents a general spoliation of them under the pretense of intended pre-emption and settlement. The settler, being under no obligation to continue his settlement and acquire the title, would find the doctrine advanced by the defendant, if it could be maintained, that he was possessed by his settlement of an interest beyond the control of the government, a convenient protection for any trespass and waste, in the destruction of timber or removal of ores, which he might think proper to commit during his occupation of the premises."

In Wilcox v. M'Connel, 38 U. S. (13 Pet.) 498, 515 (10 L. Ed. 264), the question before the Supreme Court of the United States was whether a person holding a register's certificate, without a patent, could recover the land as against the United States. The court said:

"We think it unnecessary to go into a detailed examination of the various acts of Congress, for the purpose of showing what we consider to be true, in regard to the public lands, that with the exception of a few cases nothing but a patent passes a perfect and consummate title. One class of cases to be excepted is where an act of Congress grants land, as is sometimes done, in words of present grant. But we need not go into these exceptions. The general rule is what we have stated; and it applies as well to pre-emptions as to other purchases of public lands. Thus, it will appear by the very act of 1836, which we have been examining, that patents are to issue in pre-emption cases. This, then, being the case, and this suit having been in effect against the United States, to hold that the party could recover as against them, would be to hold that a party having an inchoate and imperfect title could recover against the one in whom resided the perfect title. This, as a general propositon of law, unquestionably cannot be maintained."

The government has frequently exercised the right to withdraw from sale lands previously opened to sale, even where parties of the requisite qualifications have acquired title to tracts of a specific amount by occupation and improvement; and the Supreme Court of the United States has always held that occupation and improvement of the tracts do not confer upon the settler any right in the land occupied

as against the United States. Campbell v. Wade, 132 U. S. 34, 37, 10 Sup. Ct. 9, 33 L. Ed. 240; Frisbie v. Whitney, 9 Wall. 187, 19 L. Ed. 668.

Section 2412 of the Revised Statutes, under which the indictment was filed, is but one of the safeguards which Congress' has enacted for the purpose of enabling the Commissioner of the General Land Office to more effectually carry out and perform the powers, authorities, and duties vested in him relating to the public lands of the United States, one of which is the power, authority, and duty to enter upon the public lands for the purpose of making survey thereof. This power, authority, and duty is in no respect restricted or limited by the fact that the land upon which the survey is to be made has been located and claimed under the laws of the United States applicable to such locations or claims.

In this case we are of opinion that the five certain unpatented mining claims described in the indictment constitute a part of the public lands of the United States, within the meaning of section 2412 of the Revised Statutes; that the fact that they had been claimed and appropriated by a private corporation, did not, in the absence of a patent from the United States, so sever them from the public domain as to deprive the duly authorized surveyor of the General Land Office of the right to enter upon them for the purpose of surveying the same; that the facts stated in the indictment constitute an offense against the United States; and that the demurrer interposed by the defendant should have been overruled.

The judgment of the court below is reversed.