## UNITED STATES v. LYNCH et al.

No. 764–KA.

First Division. Ketchikan.

Oct. 17, 1929.

H. D. Stabler, U. S. Atty., of Juneau, for the United States.

James Wickersham, of Juneau, for defendant.

HILL, District Judge.

On the 16th day of October, 1924, this suit was brought on the equity side of the court by the United States against Jennie Lynch and her husband, William Lynch, to enjoin them from driving certain piling and erecting and maintaining certain permanent structures on the shore (that is, the land over which the tide ebbs and flows) of Tongass Narrows, a navigable arm of the sea in Alaska, upon which the city of Ketchikan is situated. Plaintiff's amended complaint sets up three causes of action, each of which alleges that plaintiff is the owner in fee of the shoreland involved, and that defendants are erecting and threatening to erect and maintain thereon permanent structures without au-

thorization or permission of the plaintiff. In addition to the foregoing allegations, the first cause alleges that said structures are purprestures and nuisances which obstruct the passage of the public over said shorelands and obstruct the public use thereof for purposes of navigation and fishery. The second cause alleges that on August 5, 1905, the Secretary of the Interior, being duly authorized by law, reserved these particular tidelands for use of natives for landing places for canoes and other craft, and that defendants' structures are in violation of that reservation and create an obstruction and nuisance in the use of the reservation for the purposes for which it was made. The third cause of action alleges that the defendants' structures are erected in violation of an Act of Congress approved March 3, 1899 (33 U.S.C.A. §§ 403, 406), making it unlawful to create an obstruction not affirmatively authorized by Congress to the navigable capacity of any waters of the United States.

The defendant William Lynch made his answer disclaiming any interest in the premises and structures involved except such interest as he may have by reason of being the husband of Jennie Lynch.

The second amended answer of the defendant Jennie Lynch admits that she occupies and claims 150 feet square of the tidelands situated on the water front of the town of Ketchikan and described in plaintiff's complaint, and that she intends building a permanent structure thereon to be used as her residence and dwelling, and she denies every other material allegation of plaintiff's first cause of action. Answering plaintiff's second cause of action, she admits that the Secretary of the Interior made the order of reservation alleged in the complaint, and that the tidelands she occupies are within its boundaries, but she denies its validity. This is a change from her first answer, in which she admitted the reservation, and alleged "that on August 5, 1905, the Secretary of the Interior of the United States under authority vested in him by law reserved * * * the tract described * * * and admits that said

order has ever since its date been and now is in full force." She denies each and every other material allegation of plaintiff's second cause of action. Answering plaintiff's third cause of action, she denies every allegation therein contained except that she admits that she is occupying the land in question and intends to "drive piling thereon for the purpose of building foundations and other permanent structures upon said tract of tide land."

As an affirmative defense to each of the causes of action, defendant Jennie Lynch says: "(1) That it does not state facts sufficient to constitute a cause of action against the defendant; (2) That this Court has no jurisdiction over this defendant or of the subject matter of the action so therein attempted to be alleged and stated against this defendant." This language is again repeated as a third affirmative defense to the complaint, making four times in all that it appears in the answer. A demurrer to the affirmative defenses to the complaint as a whole was sustained by Judge Reed as to the second, third, and fourth affirmative defenses, and was overruled as to the first affirmative defense. The first affirmative defense of defendant Jennie Lynch consists of eight pages filled with statements of evidentiary matter and conclusions of law from which I gather that she contends that she and her ancestors have been in possession of the tract of tideland which she now claims since before the purchase of Alaska from Russia, and that she herself, both as a Tlingit (Thlingit) Indian and as a citizen of the United States, claims the right to continue to occupy said tidelands for a residence because of such former use and occupation thereof and claim thereto. This pleading is an outstanding example of allegations which the proof fails to support. Jennie Lynch's evidence shows that her father and mother were married at Port Townsend, state of Washington, and that her father was a white man who resided at the time of her birth in the state of Washington somewhere near Port Townsend, where he worked in logging camps. She was born in one of those logging camps, and lived in the state

of Washington until she was 3 years old, which, according to her chronology, was somewhere between 1881 and 1884. Her family then moved to Jack's Cove situated a few miles south of Cape Fox which, if my map serves me correctly, would put her in British Columbia. Her father took up a homestead there. She went to school at Port Simpson, which is undoubtedly in British Columbia, and was married to a white man at Fort Edgington or Essington, which is also in British Columbia. She resided in Fort Essington about four years after she was married, and then for the first time came to Ketchikan. She fixes that time at the earliest in 1891, but says it may have been in 1892 or 1893. At Ketchikan she bought two cabins both situated upon the highland, one on what is now Steadman street and the other on Mission street. She lived in the Mission street cabin, which was 75 or 100 feet west of the highland abutting on the tideland she now claims. There is no proof that either she, her mother, or any direct ancestor of hers ever was in actual occupancy of the land she now claims until she went upon it in 1923 or 1924. There is no proof that the mother of defendant Jennie Lynch ever lived at the Thlingit village. All that the evidence shows is that Jennie Lynch's mother was a sister of Chief Kian, who did live at the mouth of Ketchikan creek in 1891, 1892, or 1893, when Jennie Lynch bought the Billy Williams cabin. When Kian went there does not appear. The court will take judicial notice that the Thlingits had many villages on the coast of Alaska prior to and after 1884. Jennie Lynch's mother may have lived at any or none of those villages, so far as the testimony shows. There is no proof that any direct ancestor of Jennie Lynch ever lived at the Ketchikan village of the Thlingit tribe of Indians. The proof shows conclusively that Jennie Lynch's mother had left the land of the Thlingits before Jennie was born, and was married to a white man. It is not shown that either Jennie or her mother at any time entered into any tribal relations whatsoever.

Taking the view I do of the facts, it seems hardly necessary to discuss the law.

■■ Because of the insistence of counsel for defendants that this is a very important case and his urgent claim that the law gives his client the right to occupy the tidelands in question, I have examined all the citations in his brief and many others. As I view it, the law is as far from supporting the contentions of Jennie Lynch as the facts are from supporting the allegations of her affirmative answer. I will briefly express my view of the law. I think I may assume as a fundamental principle in this case that upon the purchase of Alaska from Russia the United States became the owner in fee of the territory so acquired and that the Congress of the United States had plenary power over the highlands and tidelands of Alaska with the right to dispose of them or not as it saw fit. Shively v. Bowlby, 152 U.S. 1, 14 S.Ct. 548, 38 L.Ed. 331; Alaska Pac. Fisheries v. United States (C.C.A.) 240 F. 274, affirmed 248 U.S. 78, 39 S.Ct. 40, 63 L.Ed. 138. It is equally well established that mere settlement upon public lands, without taking some steps required by law to acquire title thereto, is wholly inoperative against the United States. Russian-American Packing Co. v. U. S., 199 U.S. 570, 26 S.Ct. 157, 159, 50 L.Ed. 314.

The defendants are here asserting a right, based merely on occupation, to erect permanent structures upon and occupy tidelands, not as against some other individual, but as against the United States, which is here objecting thereto. These acts of dominion, to perform which defendants claim a right, are consistent only with ownership and some vested right superior to that of the objector.

In 1905, counsel for defendants, then gracing the bench in Alaska, said:

"Congress has also declared that it will adopt the same general policy in dealing with tide lands and the beds and shores of navigable streams in Alaska that has controlled

their disposition in the United States; the declaration being:

" 'That all such rights shall continue to be held by the United States in trust for the people of any state or states which may hereafter be erected out of said district.' Act May 14, 1898, c. 299, § 2, 30 Stat. 409 (U.S.Comp.St.1901, p. 1575 [48 U.S.C.A. § 411]). * * *

"No person can acquire a vested right in such lands as the law now stands." Conradt v. Miller, 2 Alaska, 433, 441.

■ The law is still the same, but defendants insist that their occupation of these tidelands cannot be disturbed because of the provisos against disturbing existing possession in the various acts of Congress providing for the sale of public lands in Alaska. The first of these acts is that of May 17, 1884 (23 Stat. 24) which contains the broadest proviso, as follows: "That the Indians or other persons in said district shall not be disturbed in the possession of any lands actually in their use or occupation or now claimed by them but the terms under which such persons may acquire title to such lands is reserved for future legislation by Congress."

This proviso and all the subsequent provisos of similar nature are to be construed in connection with the subject-matter of the acts in which they appear, and are at most prohibitions against selling to one private person the land another private person is occupying. These provisions in no case grant the occupant any right as against future legislation of the United States. Russian-American Packing Co. v. U. S., supra.

Counsel for defendants invites my attention to the oral opinion of Judge Jennings in the case of United States v. Layton and Others, decided at Ketchiken in 1916, in which Judge Jennings said: "I think also under the Act of 1884 the defendants have rights there which the Government is bound to respect—bound by its policy and bound by its statutory enactments—bound by the virtual guaranty that it

held out to Indians and others in possession of land in 1884."

I have already indicated that in the case at bar neither the defendants nor any of their direct ancestors had possession of the tideland in question in 1884. In order to invoke (if they could do so at all) the proviso quoted above in the act of 1884, they or their predecessors in interest must have had possession of the disputed tidelands at the time of the passage of that act. Russian-American Packing Co. v. U. S., supra.

I disagree with Judge Jennings as to the effect of the provisos as against the United States. In Russian-American Packing Co. v. United States, Justice Brown, delivering the opinion of the court, says: "The whole difficulty in the argument of the defendant's counsel arises from his confounding the distinction made in all the cases whenever necessary for their decision between the acquisition by the settler of a legal right to the land occupied by him as against the owner, the United States, and the acquisition by him of a legal right as against other parties to be preferred in its purchase when the United States have determined to sell. It seems to us little less than absurd to say that a settler or any other person, by acquiring a right to be preferred in the purchase of property, providing a sale is made by the owner, thereby acquires a right to compel the owner to sell, or such an interest in the property as to deprive the owner of the power to control its disposition."

Judge Jennings also held in the Layton Case that the buildings of the defendant were not obstructions to navigation and that there was no navigation to obstruct.

■ Since Tongass Narrows are in fact navigable and are probably navigated more frequently than any other waters in Alaska, in my opinion its shores are navigable waters of the United States under the rule expressed in Weber v. State Harbor Commissioners, 18 Wall.(85 U.S.) 57, 21 L.Ed. 798, and U. S. v. Banister Realty Co. (C.C.) 155 F. 583.

. Congress, in reserving to the United States tidelands and beds of any of the navigable waters of Alaska, also defined navigable waters as follows: "The term 'navigable waters,' as herein used, shall be held to include all tidal waters up to the line of ordinary high tide and all nontidal waters navigable in fact up to the line of ordinary high-water mark." Act May 14, 1898. 30 Stat. 409, C.L.A. § 47, 48 U.S.C.A. § 411.

 I agree with defendants' contention that the reservation order of August 5, 1905, is void as to tidelands. I do not base this conclusion, as urged by counsel for defendants, upon any "friendly and successful fraud of the United States" practiced by any one. I base it solely upon the fact that the Act of May 14, 1898, extending homestead laws to Alaska (30 Stat. 409. C.L.A. § 92, 48 U.S. C.A. §§ 359, 461–465), was dealing entirely with uplands, and the further fact that a reservation of tidelands was unnecessary, since they were already reserved by common law and by the terms of the act itself (section 2, 48 U.S. C.A. § 411). To me it seems apparent that the intention of Congress, in authorizing the Secretary of the Interior to reserve tracts of land for the use of the natives, was to vest in the Secretary a right to reserve uplands, the ownership of which by private persons would include littoral rights which might be used to deprive Indians of landing places. In holding the reservation order void as to tidelands, I do not hold it void as to any uplands that may be included therein.

The brief of counsel for defendants suggests as an argument in favor of them that Jennie Lynch purchased certain lots on the uplands described in her testimony, which, during her long residence at Douglas, Alaska, were appropriated by others and are now held by "Chinese laundries and other 'joints' of the underworld," and that she, "being a poverty stricken and defenseless Indian woman," cannot recover them.

█ █ Obviously, such a condition, if true, is unfortunate and appeals to the sympathies, but offers no ground of defense to the plaintiff's action. It is also urged that there are situated on the tidelands adjoining and near those occupied by defendants many structures which are allowed to remain without action. That other artificial obstructions to navigation exist, capable of being abated by the due exercise of the public authority, does not prevent a stream from being regarded as navigable in law if, supposing them to be abated, it be navigable in fact in its natural state. The authority of Congress to prohibit added obstructions is not taken away by the fact that it has omitted to take action in previous cases. Economy Light & Power Co. v. U. S., 256 U.S. 113, 41 S.Ct. 409, 65 L.Ed. 847.

The mere silence of the government when individuals or corporations place unreasonable obstructions in the waterways of the United States cannot have the effect to cast upon the government an obligation not to exert its constitutional powers. Union Bridge Co. v. U. S., 204 U.S. 364, 400, 27 S.Ct. 367, 51 L.Ed. 523.

█ The United States attorney, by virtue of his office, has authority to bring this proceeding, and no statute is necessary to bring this suit. U. S. v. San Jacinto Tin Co., 125 U.S. 273, 8 S.Ct. 850, 31 L.Ed. 747; Sanitary Dist. v. U. S., 266 U.S. 405, 426, 45 S.Ct. 176, 69 L.Ed. 352.

I am therefore of the opinion that the permanent structures which defendants admit they plan to place on the tidelands of Tongass Narrows, and which they admit are not affirmatively authorized by Congress, will be unlawful, and that the defendants should be enjoined from erecting them.

Plaintiff is entitled to judgment as prayed for upon its first and third causes of action; and its second cause of action should be dismissed. Findings and decree in conformity with this opinion may be submitted.